## PEOPLE'S PITTSBURGH TRUST CO. v. UNITED STATES.
### No. M–90.

Court of Claims.
April 2, 1934.

L. L. Hamby, of Washington, D. C., for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This suit was begun by a petition filed March 12, 1931, to recover alleged overpayments of income taxes collected for the years 1920, 1922, and 1923, in the respective amounts of $74,846.95, $53,976.73, and $36,737.91, with interest. The plaintiff, as executor under the will of J. J. Fisher, deceased, claims that it was entitled to deduct

from the income of the estate certain amounts which were distributable under the will to the beneficiaries; also for the year 1920, plaintiff contends that it is entitled to deduct a net loss sustained in 1919.

The decedent in his lifetime was engaged in the business of buying and selling stocks, bonds, and securities. His will provided among other things for the payment of various legacies and to his wife the amount to which she would be entitled under the law after which the residue of his estate was granted to the executor as trustee for two grandsons of the decedent with provisions that for a certain length of time periodical payments should be made to them of their share of the income therefrom.

The testator died November 13, 1919. His will was admitted to probate November 18 of the same year, and letters testamentary were issued to the plaintiff on the same date. Almost immediately after his death the market value of the stocks and bonds constituting the estate began to decline, and this decline continued until at one time the estate was insolvent. Some time after the death of the testator the executor had a conference of the heirs which resulted in an understanding that all parties would forego the receipt of any income until the estate was settled and plaintiff, acting through its trust officers, carried on active dealings upon the market and even borrowed money at times to buy new stock and used other measures to protect the property of the estate, all of which are set forth more particularly in finding 6. The result of these activities on the part of the executor was to save the estate from insolvency and in the end have assets for distribution under the will.

Taking up first plaintiff's claim for a deduction in computing the 1920 taxes by reason of a loss in 1919, it is evident that it can only be allowed in event the plaintiff was carrying on a business during the period when the loss was sustained.

The parties agree that a loss was sustained in the brief period from the date of the appointment of the executor on November 18, 1919, to and including December 31, 1919; but there is no testimony as to how the loss occurred.

There is no question but that an executor may carry on a business, and where this is done the same rules apply as would if an individual were so acting. The evidence, however, fails to show what the plaintiff was doing with the estate property up to the time when an agreement was made with the heirs

to use the income in paying debts. It was some time later when the executor began buying and selling stocks when it was thought to be for the best interests of the estate and even borrowed money when necessary for the purchases which were made. The authorities are not entirely uniform as to whether a party whose occupation is buying and selling stocks is engaged in a trade or business. The activities of the executor were very similar to those in which the decedent engaged, but the purpose was not to carry on a business but to close out a business and to realize as much as possible out of the assets of the estate. While the evidence is not very definite, we think that when stocks were bought or sold it was not for the purpose of enabling the estate to continue in the field where the decedent had occupied himself. The evidence shows that the purpose in buying stocks was to sustain the market until stocks of a similar kind could be sold without a loss.

In Refling v. Burnet (C. C. A.) 47 F. (2d) 859, 860, it is said with reference to a similar situation: "The statute is restricted in its application to those regularly engaged in business, while it is the business of a personal representative to administer and wind up the affairs of the deceased."

In Ames v. Commissioner (C. C. A.) 49 F.(2d) 853, the court found that the executors in order to conserve the property of the estate carried on operations very similar to those shown by the operations of the executor in the case before us. While the court intimated that an executor might carry on a business, it was held that the executors were not carrying on a business in the statutory sense. See, also, Rogers v. United States, 41 F.(2d) 865, 70 Ct. Cl. 159.

It is not necessary, however, that we should determine whether the executor was carrying on a business after December 31, 1919. Our concern is with reference to the short period that intervened between November 18, 1919, and that date, and, as we have before stated, there is nothing in the evidence to show what the executor was doing with the property of the estate in that brief period. It may be that some stocks or securities were sold at a loss, for the market was rapidly declining, but this would not show that the executor was carrying on a business for profit. It is true that the will authorized the executor to continue the business on its former lines, but conceding that it had the power, there is nothing to show that it exercised such power during this period. On the contrary, the executor seems

to have waited to obtain an agreement with the heirs before engaging in those activities which the evidence shows were eventually pursued. Our conclusion is that plaintiff is not entitled to a deduction for a net loss sustained in 1919 for the purpose of reducing the amount of tax paid in 1920.

Plaintiff also seeks to recover a part of the taxes paid for 1920, 1922, and 1923, on the ground that it was entitled to deduct the income distributable to the beneficiaries or any of them under the will of John J. Fisher.

The plaintiff relies on the provisions of section 219 (a) (4) and (d) of the Revenue Acts of 1918 and 1921 (40 Stat. 1071, 42 Stat. 246), but defendant contends that these provisions have no application to income which is not distributed unless under the will it was required to be distributed periodically. This rule seems to be conceded, but counsel for plaintiff insists that there were considerable sums which were distributable although they do not undertake to fix the amount thereof.

The findings in the case, to which both parties agree, show that no amounts were actually distributed until after December 13, 1923. Some distributions were made shortly after, but how long after does not appear from the evidence, nor is there anything from which an itemized statement can be made up of the distributions. Under the decree made November 13, 1923, $260,298.50 was turned over to plaintiff to take care of any additional taxes which might be levied and to meet any possible demands against the estate. A part of such amount has been disbursed. Under the will, the executor was authorized to hold the estate "intact and undivided until such time as it shall have paid all of my debts and worked out each and every enterprise or transaction in which I may be occupied or engaged at the time of my decease to full completion." In order to accomplish this the executor was given very extensive powers practically the same as the decedent "could do if living." Shortly after his death, the market value of stocks and bonds constituting the estate began to fall and continued to decline until at one time the estate was insolvent. By agreement with the heirs, plaintiff used the income from the estate in carrying its indebtedness and in paying loans when it was deemed for the best interests of the estate. Securities were purchased and sold and traded in upon the market. Loans were taken over by the plaintiff in its individual capacity. Plaintiff bor-

rowed money from banks to buy new stocks when there was a drop in the market of a particular stock which it desired to dispose of and in general endeavored to liquidate the estate in the manner considered most advantageous by its trust officer. These operations saved the estate from insolvency and, as before stated, resulted in plaintiff's having assets to distribute to the trustee under the will when it was finally determined to make distribution, but the amount to be distributed was uncertain even after the decree of the court authorizing distribution had been made. If the estate in the final outcome had been insolvent the claims of the creditors would have come first and there would have been nothing to distribute.

The argument for plaintiff proceeds as if the executor and trustee were one and the same under the will, when in fact the plaintiff acted in a dual capacity, first as executor and then as trustee, and in law there were two different entities. The will is not entirely clear, but we do not think it was intended to require the executor to pay over income of the estate to distributees before the estate was settled; and if it had, under the particular circumstances of the case, such a provision could not prevail over the claims of creditors and no distribution could properly be made until authorized by the probate court. There is nothing in the evidence to show that the probate court authorized any distribution until November 13, 1923, when a large sum was turned over to plaintiff to take care of taxes. The record is silent with reference to any order for distributions to the legatees, of which the trustee was one. All we know is that the estate was not completely settled at the time the last evidence was taken. There is not even any evidence to show when the trust was established beyond a statement made by the Commissioner in denying a refund in which he says that the trust was established January 25, 1924, and at that time the assets were transferred from the estate to the trust. Although this is not disputed by the plaintiff, it cannot be accepted as evidence, and we are left without any testimony as to when the trust was established, which does not help plaintiff's case, to say the least. It is clear that during the years involved the estate was in process of settlement. No distributions were in fact made to the heirs and none were authorized by the court to be made to them. The evidence as a whole shows plainly that no sums were distributable for which the executor could claim an

allowance or deduction in computing the taxes for the years in question.

For the reasons above given, the petition must be dismissed, and it is so ordered.