SMITH'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

SMITH'S ESTATE v. HENSLEE.
Nos. 10467, 10610.

Circuit Court of Appeals, Sixth Circuit.
June 7, 1948.

F. E. Hagler, of Memphis, Tenn. (H. H. Honnoll and F. E. Hagler, both of Memphis, Tenn., on the brief; Hagler & Lowrance, of Memphis, Tenn., of counsel), for petitioner.

Fred E. Youngman, of Washington, D. C. (Theron Lamar Caudle, Sewall Key, Robert N. Anderson and Morton K. Rothschild, all of Washington, D. C., and Ward Hudgins and A. O. Denning, both of Nashville, Tenn., on the brief), for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge

The Executor of the Estate of Hugh C. Smith, deceased, appeals in Case No. 10,610 from a judgment of the District Court which dismissed its claim against the Collector of Internal Revenue for refund of taxes in the amount of $15,418.28 paid for income and defense tax liability for the year 1940. In Case No. 10,467, the Executor and Trustee under the Will of Hugh Smith, deceased, seeks a review of the judgment of the Tax Court sustaining an income tax deficiency assessment of the Commissioner of Internal Revenue in the amount of $63,625.32 for the taxable year 1941. As both proceedings arise under the same will, and out of similar facts, involving different years, they were heard together in this Court.

Hugh C. Smith died testate on August 25, 1940, leaving a widow, but no issue. On September 3, 1940, letters testamentary were issued by the Chancery Court of Obion County, Tennessee, to the First National Bank of Memphis as Executor and Trustee under the will. The will after directing the payment of all debts and expenses, devising and bequeathing the home place and household effects to his wife, and making specific cash bequests totaling $26,000, provided in part as follows:

"Third. All the residue of my estate, both real and personal, I devise and bequeath in trust to the First National Bank of Memphis, as Trustee, to be held and managed by it, and subject to the following conditions:

"From the net income derived from my estate, the Trustee is to pay my wife, Lau-

ra, the sum of Six Hundred ($600) Dollars per month during her life, and to my brother Romaldus J. Smith and my sister, Eileen Smith Cowhig, the sum of Three Hundred ($300.00) Dollars per month, each during their lifetime. * * *

"After the payment of all inheritance taxes, both Federal and State, the Trustee is not to be limited in the distribution of the net income to the amounts above stated, but is to distribute the entire net income to my wife and my said brother and sister, or their children, in the event of their deaths before the termination of this trust, in the same proportion as is herein provided, but never less than the amounts hereinabove stated; i. e., the amount of income to be paid my wife in any event to be twice the amount paid to my brother and sister, or their heirs.

"Fourth. * * *

"Fifth. This trust hereby established shall continue so long as my wife or any of my said brothers or sisters shall live, and upon the death of the last one of them, the said trust shall cease, and my entire estate to be divided into six parts, and the title thereto vested absolutely in the issue per stirpes of Romaldus J. Smith, Eugene A. Smith, Eileen Smith Cowhig, Joel G. Smith, Mary Smith Mooty and Lilla Smith Turner.

* * * * * *

"Tenth. All inheritance and succession taxes are to be paid by my executor or trustee out of the residuary estate, and shall not be charged to the individual shares of any beneficiary."

On September 16, 1940, the widow renounced the will and its provisions in her favor and elected to take in lieu thereof her legal share of the estate under the laws of Tennessee.

On December 17, 1941, the First National Bank as Executor and Trustee of the Estate of Hugh C. Smith filed a suit in the Chancery Court of Shelby County, Tennessee, against Romaldus Smith and other parties in interest, asking for a construction of the Third, Fourth, Fifth and Tenth clauses of the will, stating that on account of the widow having dissented from the will it had become impossible to carry out the trust in strict accordance with its terms. On September 15, 1942, the Chancery Court entered an interlocutory decree which provided that the widow having dissented from the will and Romaldus Smith having died subsequent to the death of the testator,—

"The Trustee is authorized to distribute the net income one-half to the defendant Mrs. Eileen Smith Cowhig and one-half to the estate of Romaldus J. Smith up to the date of his death, to-wit January 28, 1942, and the balance equally divided among the defendants, Louise Smith, Louis Smith, and Mrs. Lottie Goode, the surviving children of Romaldus J. Smith, they under the terms of the said will to receive their father's interest in income prior to the termination of the trust, the said income to accrue to the life beneficiaries as and from the date of the death of the testator.

* * * * * *

"The Court is further of the opinion and so adjudges and decrees that the widow having dissented from the will, is entitled to one-third of the personal estate after the payment of all obligations, taxes, costs of administration, etc., and that such interest is subject to the payment of the Federal Estate Taxes, but reserves for future adjudication the question of whether there should be any equitable apportionment of the estate tax between her and the other interested parties, the cause being retained in Court for the adjudication of that question and for all other purposes."

Other findings by the District Judge and by the Tax Court in the respective cases, not necessary to be restated here, are reported in In re Smith's Estate, D.C., 64 F. Supp. 196 and First National Bank of Tennessee v. Commissioner, 7 T.C. 1428.

The Executor on March 13, 1941 filed a fiduciary income tax return for the estate for the period August 26, 1940 to December 31, 1940, which disclosed a total net income of $51,292.96, and a total income and defense tax liability in the amount of $15,418.28. The claim for refund was not acted upon for six months and the suit for refund followed in the District Court.

The Executor filed an income tax return for the estate for the year 1941 in which there was reported net income of $112,427.26, of which $93,689.39 was deducted as distributable to beneficiaries and disclosing a

tax of $4,453.93, which was paid. This return also included the income from all property which the widow took by her dissent. On September 6, 1944, the Executor filed a claim for a refund of the taxes so paid. However, the Commissioner determined that a deficiency existed which the Tax Court sustained.

 The fiduciary contends the income is taxable to the beneficiary instead of to it. The ruling is controlled by Sections 162(b) and 162(c) of the Internal Revenue Code, prior to the amendment of October 21, 1942,[1] Sections 162(b) and 162(c) Title 26 U.S.C.1940 Ed., 26 U.S.C.A.Int.Rev.Code, § 162(b, c). Subsection (b) provides that the net income of an estate or trust shall be computed in the same manner as in the case of an individual, except that there shall be allowed as an additional deduction "the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * *. But the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not." Subsection (c) provides that in the case of income received during the period of administration of an estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction the amount of the income for its taxable year "which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary." It seems clear that the claimed deduction for the estate is not authorized by subsection (c) in that the income was neither paid nor credited during either of the years to any legatee, heir or beneficiary as required by the subsection. In order for the deduction to be authorized under subsection (b), the income received by the fiduciary must be income "which is to be distributed currently by the fiduciary to the beneficiaries." The words "to be distributed currently" have been construed as

meaning income *directed* by a will or deed to be currently distributed; the words presuppose a periodic duty on the part of the fiduciary. Commissioner of Internal Revenue v. Stearns, 2 Cir., 65 F.2d 371; Commissioner of Internal Revenue v. First Trust & Deposit Co., 2 Cir., 118 F.2d 449. As said in Freuler v. Helvering, 291 U.S. 35, at page 42, 54 S.Ct. 308, 311, 78 L.Ed. 634,—"The test of taxability to the beneficiary is not receipt of income, but the present right to receive it." See also Commissioner of Internal Revenue v. Gutman, 2 Cir., 143 F.2d 201; 6 Mertens, Law of Federal Income Taxation, Sec. 36.41.

 The income received by the fiduciary in the taxable years 1940 and 1941 did not fall into that classification. The will did not expressly provide that the income was to be currently distributed to the beneficiaries immediately following the decedent's death. The executor was entitled to temporarily accumulate the income during the necessary period of administration, even though ultimately after the administration was completed the beneficiaries would be entitled to the unused income accruing subsequent to the date of the death of the testator. Usually a careful executor will not make distribution until after the period for the filing of claims has expired, and a legatee or beneficiary can not require it. In cases where there is practical assurance that the assets of the estate are more than ample to take care of all claims and expenses, an executor may as a practical matter and for the convenience of the legatees make partial distribution before the period has expired, but he is not required to do so. In such cases the income so distributed "is properly paid or credited" during the year to the legatee and will be a deduction under Sec. 162(c), but it is not income "which is to be distributed currently by the fiduciary" under the provisions of Sec. 162(b). In the present case proper administration of the estate was a complicated matter. The will restricted the sale of corporate stock in the decedent's business, which he wished continued. As stated in Paragraph IV of the bill in the state court action, the corporation held franchises for the bottling of

[1] For a discussion of the Amendment and its effect, see Carlisle v. Commissioner, 6 Cir., 165 F.2d 645.

coca-cola, with five bottling plants being owned individually by the decedent, and the widow's renunciation of the will entitled her to a dower interest in the real estate and the ultimate ownership in one-third of the personalty, which included the franchises. The plants without franchises or franchises without plants presented a difficult situation. The bill presented for approval a tentative plan of distribution reached with the widow, life beneficiaries, and minority stockholders after much negotiation. The renunciation of the will also made it impossible to carry out the trust in strict accordance with its terms. The bill requesting advice and instructions in the matter so stated, and shows that until the State court ruled in the matter the fiduciary did not know what the assets of the estate would be, or how the income should be legally distributed. See Estate of Fairbanks v. Commissioner, 3 T.C. 260. The State court's decree was not entered until after the taxable years in question. Even then, the question of apportionment of estate taxes was reserved for a later ruling.

 The fiduciary contends that although the will did not expressly provide for the income to be currently distributed, such distribution was required by the decree of the Chancery Court construing the will after the widow's renunciation. Stress is placed upon that portion of the decree stating "the said income to accrue to the life beneficiary as and from the date of the death of the testator." We agree that the state judgment fixes the rights of the beneficiaries in the trust and that the ruling in this respect is controlling upon the Federal court in applying the Federal Tax Statute, it being immaterial whether the decision was before or after the taxable year involved. Freuler v. Helvering, supra; Morgan v. Commissioner, 309 U. S. 78, 60 S.Ct. 424, 84 L. Ed. 585; Hale v. Anglim, 9 Cir., 140 F.2d 235, 237; Letts v. Commissioner, 9 Cir., 84 F.2d 760; McCaughn v. Girard Trust Co., 3 Cir., 19 F.2d 218. See also Burchenal v. Commissioner, 6 Cir., 150 F.2d 482. But we do not give to the state decree the effect claimed. The suit was filed to determine the property rights of the parties in the income; it did not seek to compel a distribution at that particular time. Likewise the decree merely settled the respective rights of the parties in the income; it did not determine when the net income should be distributed to them. The decree provided that the income was "to accrue" from the date of the death of the testator; it did not provide that it was to be immediately paid after the date of the death of the testator. It provided that the *trustee* was *authorized* to distribute the net income half and half; it did not authorize the executor to do so nor did it *direct* the trustee to do so. During 1940 and 1941 the trust estate had not been set up. The prayer of the bill in the state court action asked "That this trust be established." The estate was still in the period of administration; the fiduciary had not begun to function as the trustee. The contention that the fiduciary was appointed trustee by the will and qualified as such on September 3, 1940 at the same time when it qualified as executor does not change the situation. Although it qualified as trustee at that time, it did not begin to perform the duties as trustee at that time. The positions of executor and trustee are separate, even though held by the same person. Garner v. Dowling, 58 Tenn. 48, 49. Although it was not necessary for the Bank to make a final settlement of its accounts as executor and formally turn over the assets of the estate to itself as trustee in order for it to act as trustee (Third National Company v. Commerce Union Bank, 181 Tenn. 509, 181 S.W. 2d 759), and the beneficiaries of the trust are entitled to the income from the trust fund from the date the executor came into possession of sufficient assets of the estate to justify the setting apart the trust fund from the remainder of the estate (Fidelity Trust Co. v. Service Laundry Co., 160 Tenn. 57, 70, 71, 22 S.W.2d 6), yet distribution of such income is not necessarily required at the time when income begins to accrue. We do not construe American National Bank v. Embry, 181 Tenn. 392, 181 S.W.2d 356, 359, strongly relied upon by petitioner and appellant, as holding otherwise. That case involved the question whether the life tenant or the remaindermen of a trust estate created by will were

entitled to interest from assets of the decedent's estate while in process of administration. It held that the life tenant was entitled to such income "from the date of the death of testatrix," but it did not hold that such income was immediately payable. To the contrary the opinion specifically stated "the residuary estate is set up as of the date of the death of the testator, subject to be charged with, and so diminished by taxes, other legacies and the expense of administration." Obviously, time must be allowed after the death of the testator for the executor to legally determine the net assets of the residuary estate, which will constitute the trust estate, and to legally determine, even through litigation where necessary, the respective rights of beneficiaries in the income therefrom. The income may accumulate or accrue during such period of time, but it is not necessarily distributable. People's Pittsburgh Trust Co. v. United States, 6 F.Supp. 447, 454, 79 Ct.Cl. 233.

▆▆▆ We do not agree with the fiduciary's further contention that it was entitled to exclude from the income taxable to the estate so much of the income as was earned during the taxable years upon the widow's statutory interest in the estate following her dissent from the will; the argument being that the widow's statutory share was her property immediately upon dissent and was not thereafter a part of the trust estate. Under the Tennessee statutes, the widow, upon dissenting from the decedent's will, was entitled to a one-third part of the personal estate, her dower interest of one-third part of the lands of which her husband died seized and possessed, and a year's support. William's Tennessee Code, Annotated 1934 Ed., §§ 8231, 8260, 8351, 8358. However, her interest in the personal property was subject to the claims of creditors and charges against the estate. Cannon v. Apperson, 82 Tenn. 552, 592–593. Her right of dower in the real estate conferred no vested title in the real estate until assignment of dower was made. The decedent's real estate descended to the devisee who had the undivided seisin until the assignment of dower, and who alone was entitled to receive the rents and profits therefrom until that time. North v. Puckett, 164 Tenn. 100, 102, 46 S.W.2d 73, 81 A.L.R. 1107; Latta v. Brown, 96 Tenn. 343, 355, 356, 34 S.W. 417, 31 L.R.A. 840. Sections 8231 and 8371 of the Tennessee Code provide for the application by the widow to the Court for the assignment of her interests, and the procedure which is followed by the Court thereafter. The records do not disclose any such application made by the widow or any assignment by the Court of her rights in the decedent's estate. The income from that portion of the estate was not currently distributable to the widow and was properly taxable to the fiduciary.

The judgments of the District Court and of the Tax Court are accordingly affirmed.