See also, Tenn.App., 588 S.W.2d 757.

### In re Estate of James Frank INMAN, Deceased.

**Robert S. INMAN, Co-Executor of the Estate of James Frank Inman, Deceased; James Edward Inman and Mary Joyce Inman Behla, Appellants,**

v.

**UNION PLANTERS NATIONAL BANK OF MEMPHIS, Co-Executor of the Estate of James Frank Inman, Deceased, Appellee.**

Court of Appeals of Tennessee, Western Section.

Aug. 22, 1979.

Certiorari Denied by Supreme Court Oct. 22, 1979.

Robert L. Taylor, Taylor, Marshall & Uhlmann, P.C., Memphis, for Robert S. Inman.

Fyke Farmer, Nashville, for James Edward Inman and Mary Joyce Inman Behla.

S. Sheperd Tate, W. Thomas Hutton, Martin, Tate, Morrow & Marston, P.C., Memphis, for appellee.

EWELL, Judge.

This litigation originated in the Probate Court of Shelby County where the estate of James Frank Inman is in the process of administration. The appeal is from an order entered on the petition of James Edward Inman and Mary Joyce Inman Behla, children of James Frank Inman and beneficiaries under his will, seeking restoration to the estate of funds allegedly improperly disbursed to Annabell Riggsbee Inman, widow of James Frank Inman and beneficiary under his will, and seeking to have the co-executors show cause why they should not be ordered to pay penalty and interest which had accrued on taxes against real property of the estate, which taxes the co-executors failed to pay when due.

The Probate Judge found that the co-executor, Union Planters National Bank, had the right to make the advancements to the widow and held that restoration was not required but that proper accounting therefor should be made upon distribution and closing of the estate. The Court further held that the co-executors, Union Planters National Bank and Robert S. Inman, should restore to the estate, the sum of $2,703.78 with interest thereon from date of payment, which amount constituted the total of penalties, interest and court costs incurred by reason of their failure to pay when due the real estate taxes in question. James Edward Inman and Mary Joyce Inman Behla appeal from that portion of the order relating to advancements made to the widow; and Robert S. Inman, co-executor, hereinafter referred to as Inman, appeals from that portion of the order wherein he is held jointly liable with his co-executor, Union Planters National Bank, hereinafter referred to as Bank, for the restoration of funds to the estate.

James Frank Inman died on January 31, 1972, and his will was admitted to probate on February 2, 1972. He was survived by his second wife, Annabell Riggsbee Inman, and three adult children of a former marriage, Robert S. Inman, James Edward Inman and Mary Joyce Inman Behla. Pursuant to the will Robert S. Inman and Union Planters National Bank, Memphis, Tennessee, were appointed co-executors.

On March 3, 1976, James Edward Inman and Mary Joyce Inman Behla filed a petition, subsequently amended, to contest that portion of the will creating trusts funded by the residuary estate. The portion of the will naming the co-executors was not contested. The will as probated was sustained in Circuit Court, and the contestants have appealed. The co-executors continue to act as such.

For a period of thirty-one months from February, 1972 through August, 1974 the Bank advanced to the widow the sum of $1,000.00 each month. In addition, on December 22, 1975, the Bank advanced to her the sum of $3,000.00 bringing the total of advances to $34,000.00. These advances were made after notice by the Bank to Inman as co-executor. He responded through his attorney stating that although he did not object to the advancements he assumed no personal liability or liability as co-executor for such in the event there were not sufficient funds to pay taxes, administration expenses, debts and other charges against the estate. No advances have been made since December 22, 1975. The petition questioning the propriety of these advances was filed in the Probate Court in February, 1977.

The will, as probated, provides that after the payment of a $10,000.00 charitable bequest and a bequest of the tangible personal property to the widow, and the payment of all debts, administration expenses and death taxes, the residue of the estate is to be held in two separate trusts, with 25% of the residue to go the Marital Deduction Trust and the remaining 75% to go the "children's trust". The Bank is trustee of both trusts. During the lifetime of the widow all of the net income of both trusts is

to be paid to her. In addition, the testator provided in Item X of the will as follows:

> My trustee shall have the right and the duty in the event the net income from the said trust profits during the life of my wife is not sufficient to maintain and support her in the manner to which she is accustomed or to provide her with all necessary medical and hospital services, to encroach upon the corpus and to pay so much thereof to my wife which, coupled with the net income, will support and maintain her in the manner to which she is accustomed and will provide her with all necessary medical and hospital services.

The estimated value of the estate is $800,000.00. At the time of the hearing there was a contested potential deficit in death taxes owed to Internal Revenue Service of $191,000.00 and a contested potential deficit in death taxes owed to the Department of Revenue of the State of Tennessee of $20,000.00. The proof is not clear as to whether or not the income of the estate was sufficient to cover all of the advances made to the widow at the time they were made. The Bank insists that advances were made from income only; and the petitioners insist that it was necessary for the Bank to invade the corpus. In any event, it appears from all the proof that the assets of the estate are more than adequate to pay all of the estate's administration expenses and taxes and adequately fund the Marital Deduction Trust so that the prior advances may be charged thereto.

Petitioners-appellants insist that the residuary estate cannot be determined and the testamentary trusts funded until the co-executors have paid all death taxes and costs and expenses of administration and that pending such payments all assets of the estate and income therefrom must be held to be so applied. They rely heavily on the Sixth Circuit case of *Smith's Estate v. Commissioner of Internal Revenue*, 168 F.2d 431 (1948), a case originating in the Middle District of Tennessee. In an opinion written by Judge Miller the Court states:

The executor was entitled to temporarily accumulate the income during the necessary period of administration, even though ultimately after the administration was completed the beneficiaries would be entitled to the unused income accruing subsequent to the date of the death of the testator. Usually a careful executor will not make distribution until after the period for the filing of claims has expired, and a legatee or beneficiary can not require it. In cases where there is practical assurance that the assets of the estate are more than ample to take care of all claims and expenses, an executor may as a practical matter and for the convenience of the legatees make partial distribution before the period has expired, but he is not required to do so. . . .

. . . . . .

. . . The estate was still in the period of administration; the fiduciary had not begun to function as the trustee. The contention that the fiduciary was appointed trustee by the will and qualified as such on September 3, 1940 at the same time when it qualified as executor does not change the situation. Although it qualified as trustee at that time, it did not begin to perform the duties as trustee at that time. The positions of executor and trustee are separate, even though held by the same person. *Garner v. Dowling*, 58 Tenn. 48, 49. Although it was not necessary for the Bank to make a final settlement of its accounts as executor and formally turn over the assets of the estate to itself as trustee in order for it to act as trustee (*Third National Company v. Commerce Union Bank*, 181 Tenn. 509, 181 S.W.2d 759), and the beneficiaries of the trust are entitled to the income from the trust fund from the date the executor came into possession of sufficient assets of the estate to justify the setting apart the trust fund from the remainder of the estate (*Fidelity Trust Co. v. Service Laundry Co.*, 160 Tenn. 57, 70, 71, 22 S.W.2d 6), yet distribution of such income is not necessarily required at the time when income begins to accrue.

We do not construe *American National Bank v. Embry*, 181 Tenn. 392, 181 S.W.2d 356, 359, strongly relied upon by petitioner and appellant, as holding otherwise. That case involved the question whether the life tenant or the remaindermen of a trust estate created by will were entitled to interest from assets of the decedent's estate while in process of administration. It held that the life tenant was entitled to such income "from the date of the death of the testatrix," but it did not hold that such income was immediately payable. To the contrary the opinion specifically stated "the residuary estate is set up as of the date of the death of the testator, subject to be charged with, and so diminished by taxes, other legacies and the expense of administration." Obviously, time must be allowed after the death of the testator for the executor to legally determine the net assets of the residuary estate, which will constitute the trust estate, and to legally determine even through litigation where necessary, the respective rights of beneficiaries in the income therefrom. The income may accumulate or accrue during such period of time, but it is not necessarily distributable. *People's Pittsburgh Trust Co. v. United States*, 6 F.Supp. 447, 454, 79 Ct.Cl. 233.

Judge Miller has concisely stated the law of this State relevant to the issue now before us. From the record we find that there was and is "practical assurance that the assets are more than ample to take care of all claims and expenses". All beneficiaries will be properly protected under the order of the Probate Court requiring the co-executors to make proper accounting for such advances in the distribution and closing of the estate, and we find no error in the refusal of the Court to require the Bank to restore the advances to the estate.

■ A major asset of the estate is the acreage located at the intersection of Interstate 240 and Farrisview Road in Memphis. At the time of the testator's death a portion of this property was under mortgage securing indebtedness to E. H. Crump and Company, and the real property taxes, city and county, were paid by Crump from an escrow account held in connection with that indebtedness. During the course of administration a small portion of the real estate in question was sold with the purchaser assuming the Crump indebtedness. Following that sale Crump ceased to pay real property taxes on the remainder of the property retained by the estate, and the co-executors failed to pay when due the city and county real property taxes for the years of 1975, 1976 and 1977. These taxes were ultimately paid by the Bank after a total of $2,703.78 had accrued in penalty, interest and court costs. The Probate Judge held the co-executors jointly and severally liable for restoration to the estate of that sum, plus interest thereon from date of payment. Inman insists that the Court erred in imposing responsibility and liability upon him and charges that the failure to pay when due resulted solely from the negligence of the Bank which had possession of all of the liquid assets of the estate.

The property was assessed as two separate tracts consisting of 15 acres and 18.6 acres. Both tracts were carried on the tax roles as being owned by "Robert S. Inman, et al, Union Planters Bank." All tax notices relating to the 15 acre tract were addressed to Robert S. Inman, et al., 3131 Farrisview Road, Memphis, Tennessee, 38118; and all tax notices relating to the 18.6 acre tract were addressed to Robert S. Inman, et al., Memphis, Tennessee, 38118. From the proof it appears that neither Inman nor the Bank was aware of the failure to pay these taxes until February, 1977.

During this time there was pending other litigation involving the same real estate wherein Inman, individually, and the Bank, as representative of the estate, were adversaries. Inman, therefore, had an interest in this real estate both personally and as co-executor of the estate.

We think the third paragraph of Item I of the will is significant. In that paragraph the testator stated:

So that there can be no dispute with respect to the fee of my son, I direct that

my son be paid a fee for his services of an amount equal to two (2%) per cent of my gross estate, and his acceptance of this appointment shall evidence his agreement to such fee. He will be particularly valuable in the administration of my estate in disposing of interests which I have in real estate.

From the above we conclude that the testator desired that Inman serve as co-executor because of his knowledge and expertise in real estate. The proof reveals that he is a successful developer of real estate in and around Shelby County, and it appears that the testator directed the payment of a substantial fee to him in compensation for his services in this regard.

When Inman accepted the appointment as co-executor he assumed the responsibilities of that office as set forth in Section 695 of *Phillip's Pritchard Law of Wills and Administration of Estates* (3rd ed. 1955) as follows:

> In the custody, management, and disposition of the estate committed to his charge, as in the collection of the assets, the representative is bound to perfect good faith, and to the exercise of that degree of diligence, prudence, and caution which a reasonably prudent, diligent, and conscientious business man would employ in the management of his own affairs of a similar nature; and he is responsible for any negligence causing loss, or for any want of good faith producing injury, in case of failure to perform the duties required of him according to this rule.

From the failure to pay the real property taxes when due we conclude that the co-executors did not exercise that degree of diligence, prudence and caution which a reasonably prudent, diligent and conscientious business man would employ in the management of his own affairs of a similar nature. With regard to liability for the resulting loss to the estate as between the two co-executors, the law is summarized in 34 *Corpus Juris Secundum*, Executors and Administrators, Section 1045 at pages 1323 and 1324, as follows:

A wrong done or a duty omitted by the person sought to be charged must lie at the foundation of liability of one representative for the acts or omissions of his associate. As a general rule, the liability of one of several executors or administrators extends only to the assets actually received by him, and he is not liable for the acts or omissions of his corepresentatives, unless he knew, or should have known, of circumstances requiring him to safeguard the estate. So it has been broadly stated that an executor or administrator is not liable for a devastavit committed by his cotrustee; more precisely, a coexecutor or coadministrator who has not had possession of the assets of the estate, and who has not concurred in, or negligently permitted, a devastavit by his associates, is not liable therefor. A corepresentative is, of course, liable for his own acts or omissions, or for those of his corepresentatives in which he concurs or acquiesces, or to which he assents.

Although the liquid assets of the estate were in the possession of the Bank, Inman was personally familiar with and had knowledge and expertise in relation to the real estate in question. All tax notices were addressed to him only although from the proof we conclude that neither Inman nor the Bank actually received the notices until February of 1977. There is no evidence that either of the co-executors took any action with reference to the taxes prior to that time. We find that the interest, penalty and court costs became a liability against the estate as a result of the omissions of both co-executors. Therefore, we conclude that the Trial Court did not err in holding both Inman and the Bank jointly liable and responsible for the restoration of these funds to the estate.

Accordingly, all assignments of error are overruled and the judgment of the Trial Court is in all things affirmed. The cost of appeal will be assessed one-half against the appellants, James Edward Inman and Mary Joyce Inman Behla, and their surety, and one-half against the appellant, Robert S. Inman, and his surety.

MATHERNE and NEARN, JJ., concur.