# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 28, 2014 Session

## IN RE ESTATE OF MARY PAULINE STUMPE SCHORN

**Appeal from the Chancery Court for Anderson County**
**No. 04PB0077      William Everett Lantrip, Chancellor**

---

**No. E2013-02245-COA-R3-CV-FILED-APRIL 17, 2015**

---

This is an estate case before this court a second time.[1]  The decedent's eldest son was named the personal representative of his mother's estate.  Two siblings, citing accounting irregularities and other issues, eventually sought their brother's removal from the personal representative position.  The trial court agreed with the siblings and named a substitute personal representative. The initial personal representative appeals.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Donald K. Vowell, Knoxville, Tennessee, for the appellant, John H. Schorn.

Ann Mostoller, Oak Ridge, Tennessee, for the appellees, Mary V. Schorn and Charles A. Schorn.

Joseph H. Van Hook, Oliver Springs, Tennessee, pro se, Court Appointed Personal Representative.

---

[1] In re Estate of Schorn, 359 S.W.3d 192 (Tenn.Ct.App.,2011); http://www.tncourts.gov/sites/default/files/in_re_the_estate_of_mary_pauline_stumpe_schorn_deceased_opn.pdf

# OPINION

Mary Pauline Stumpe Schorn ("Decedent") of Clinton, Tennessee, died on January 14, 2004. A Last Will and Testament ("Will") was found among Decedent's papers, naming John Henry Schorn, Decedent's eldest son, as personal representative ("the PR"). The beneficiaries listed in the Will were John, sisters Mary Victoria Schorn and Virginia Ann Chandler, and brother Charles Albert Schorn. The Will, filed for probate in March 2004, provided that the estate of Decedent ("Estate") was to be divided equally between the four siblings. The Estate was initially valued by the PR at approximately $415,000.

After a September 2006 hearing, the trial court announced an "order to approve settlement of all parties" on January 30, 2007. The court stated inter alia:

1) John H. Schorn is the qualified Personal Representative of this estate.

2) The estate is solvent.

3) Charles Schorn was indebted to the testator in the amount of $7,541.24 which amount is to be subtracted from Charles Schorn's distributable share.

4) The parties agreed that Donald B. Roe should be awarded an attorney's fee in the amount of $10,217.54; Ann Mostoller should be awarded an attorney's fee in the amount of $2,000.00, and John Schorn should be awarded a personal representative's fee in the amount of $13,284.81.

5) That the parties have agreed to resolve all other issues and submit an agreed final accounting.

However, the agreement to "resolve all other issues and submit an agreed final accounting" did not come to fruition.

Prior to Decedent's death, the PR, using a power of attorney, removed $15,000 from his mother's bank account and deposited the cash into a new account at NBC on which he and Mary initially were listed as the joint owners. According to the PR, this account was opened to allow for the paying of Decedent's expenses until the time the Estate was opened. At a later date, however, the PR placed the $15,000 in a safe deposit box. He explained that he did so to keep Mary from getting the money after "her actions became unpredictable."

Mary and Charles eventually began asking questions about the money seemingly missing from the NBC account and other matters concerning the management of the Estate. In particular, it was claimed that the PR paid himself approximately $72,000 after the September 2006 hearing. Another issue involved applying for a taxpayer identification number for the Estate, but not opening a checking account in the Estate's name. It is contended that at least eight bank accounts were maintained during the PR's tenure. He used these accounts as "estate" accounts except for paying the bills; he opened a checking account in his name for that purpose.

In light of the alleged mismanagement by the PR, Mary and Charles requested accounting and banking information, along with other documentation. The trial court granted the motion for an accounting. After much time and expense, no money was found to be missing.

At some point during the course of events, Decedent's home at 215 Cedar Road in Clinton suffered water damage after the hot water heater burst. Insurance paid $11,076.59 for repairing the damage. The PR, on his own, decided the home needed extensive repairs beyond the work related to water damage and mold remediation, including removal of non-standard wiring, repair of an interior brick wall, refinishing of the basement, and painting and general repair of the house. Assisted by his wife, the PR performed all of the repair work himself. He thereafter submitted an expense claim of $19,958.40 (480 hours at $41.58 per hour). Outside vendors made repairs of $4,600.75. The house eventually sold for $135,000.

When Decedent's house was sold, the beneficiaries and the PR all signed the deed, with the PR executing the settlement statement and other documentation. The PR asserts that no one objected to the way he handled the repairs of the house, the method by which the sale of the house was conducted, or the partial distribution. The insurance check in the amount of $11,076.59 was also deposited into the Estate account, with no objection from any of the parties.

Prior to the sale of the house, all of the siblings gathered for a yard sale at the home. During the sale, Mary requested that she be allowed to remove certain items of personal property in order to have them appraised. The value of the items given by the appraiser was $1,342.

As noted previously, Charles had borrowed a sum of money from his parents and the promissory note had an initial interest rate of 10%. The parents later reduced the rate to 8%.

The PR determined that Charles owed the Estate $7,541.24.

By 2008, the siblings were requesting that the PR be replaced. In September 2009, the trial court did not yet act on the removal request, but ruled as follows:

1.      That the PR shall promptly return the $15,000.00 he segregated in a safe deposit box to the estate;

2.      That the share of the PR shall be reduced by the loss of interest to the estate for the $72,190.00, removed on October 31, 2006 by the PR, and not returned until October 20, 2008, calculated at an interest rate of six percent (6%), also six percent (6%) on the $15,000.00 from May 16, 2005 until the date of this hearing;

3.      That the application for compensation for out of pocket compensation for expenses filed by the PR in the amount of $19,958.40 shall be allowed in the amount of $6,500.00;

4.      That the application for additional PR fees filed in the amount of $8,250.00 shall be allowed in the amount of $2,500.00;

5.      That Ann Mostoller, attorney for Mary V. Schorn and Charles A. Shorn, shall be allowed an additional fee of $4,000.00 for a total to be paid from the estate of $6,000.00;

6.      That the PR shall immediately provide to the beneficiaries all banking records for the estate from September, 2008 to the date of this hearing;

7.      That the final accounting and disbursements shall be completed within 60 days or, upon motion, this Court will take steps to remove the PR.

Specifically, the trial court found that the record provided that "work done on the house is not supported by the evidence." It was further determined that "the rate of pay requested of $41.85 is not reasonable and that many of the activities provided in the accounting introduced

-4-

did not benefit the estate . . . ."

In March 2010, the trial court altered and amended the September 2009 order, changing the rate to calculate interest due the Estate from the PR on the sums of $72,190 and $15,000 from 6% to 1.9%. The court further amended the order to find that the PR had already returned the $15,000 to the Estate account by the time of the July 31, 2009 hearing, that the PR returned the money on March 17, 2009; accordingly, the court determined the Estate was due interest on the sum from May 16, 2005, through March 17, 2009. The trial court declined to further alter the prior order.

The PR thereafter appealed to this court. We, however, found the order appealed from was not a final judgment and entered a dismissal.

On September 12, 2011, the PR was removed for good cause. The trial court stated the PR "has failed to faithfully execute the duties of a personal representative. . . . [T]here's proof that he converted estate assets, which necessitated legal fees and actions by other heirs, and I think he's in a situation where he bears an apparent conflict of interest in pursuing his claims . . . ." The court found the PR's claims to be "inflated and unjustified." The court further related:

> Good cause has existed for years to remove Mr. Schorn. He has done everything in his power, in the Court's opinion, to thwart the orders of the Court and failed to comply. If there ever was a case where good cause has existed, for a substantial period of time, to have this matter concluded and resolved and to avoid the continuous costs associated to all the heirs, this is the case. . . . Seven years on what is one of the most simple estates I have been presented is an outrage, and the Court will not tolerate another day with Mr. Schorn as personal representative of this estate.

A substitute personal representative, Joseph H. Van Hook, was appointed.

Ultimately, the trial court ruled that Decedent's home should not have been considered a part of the Estate and that the PR should not have expended money on it. Again, it was determined that the PR's claims regarding the house were exaggerated and did not necessarily benefit the Estate. The court concluded that there was nothing due the PR for effort expended on the non-probate real property. Additionally, the court found that the PR

filed an improper appeal that was a waste of Estate resources. In the view of the court, the litigation primarily concerned John's personal position - it had nothing to do with the good of the Estate.

The trial in this matter was held on April 30, 2013. During that proceeding, the court returned the disputed boxes of personal property to Mary and determined that the loan charged against Charles had been satisfied and that no interest should be charged. The court further found:

> Based upon the statements made to the Court here by parties who – and the Court realizes that everybody benefitted, that the title company considered this to be a part of the probate estate. All the parties acted as if this was part of the probate estate.

> And I may be wrong from a legal standpoint, but I think to just simply – because I do think the parties would have cause of actions outside of the probate to seek reimbursement.

> The Court is going to, once again, reverse the decision as it relates to the real property and find that there has been a knowing waiver by the heirs who actually acquired this property at the time of death of their mother and that the Court finds that the $6,500 – and the Court recognizes that part of that $11,000 estimate included overhead applied to the $9,000 evaluation, that it also included carpeting and materials which I think the estate paid for so that I believe the $6,500 to be justified and earned by Mr. Schorn for his responsibilities. So the Court, once again, is going to back away from the reduction of the $6,500.

> As it relates to all other issues, I think they relate to the Court's determination of reasonable fees and expenses . . . .

* * *

MS. MOSTOLLER: You know the Clerk and Master found the boxes should be dealt with by the personal representative.

THE COURT: If [Mary]'s going to be charged with it, she needs to get whatever's there.

MS. SCHORN: I mean if I'm paying for it.

On August 12, 2013, the trial court heard the fee issues and made the following findings:

THE COURT: This, as I stated earlier today, this essentially was a dollar estate. It was a cash estate, approximately $300,000. I would be hard-pressed to – in over the 24 years I've been on the bench, to award $10,000 to an attorney without a showing of substantial complication in an all cash estate and only the agreement of the – of all the heirs would have allowed this Court to approve $10,000 to Mr. Roe for a non-completed estate.

Essentially, $16,000 has been paid, a thousand dollars to Bob Wilkinson; $10,000 to Don Roe; $5,000 to Mr. Varcelona; and some guy who owns a restaurant, who was employed as an accountant. . . .

Essentially, this commenced as a dispute and over whether or not the monies, that I was shocked to find out that all the heirs knew that the monies had been withdrawn from the parent's estate or accounts prior to death, but it's clear that there was a question as to its location, the amount that remained after payment; and when it was finally discovered, it was in a safe deposit box. It was not even in an account.

I was pleased to learn after the last hearing that Mr. Schorn had not stolen vast sums of money from the estate, but it appears that the parties engaged in a "gotcha" type of action.

Suspicion over movement of monies, the failure to establish an estate account, commingling of monies in accounts with Mr. John Schorn and his wife gave good reason for suspicion, especially upon the failure to account and provide any documentation of the existence of the missing monies.

* * *

But I am confident that . . . nothing, from a dollar and cent standpoint, was actually missing.

But it's clear to me that since September of 2006, the entire effort involved in this case has been related to fees and reimbursements. They persist to today, seeking monies for repairs to this house that was not a part of the probate estate.

There has been absolutely no benefit to this estate by Mr. Schorn's actions . . . with him seeking to compensate his wife for accounting work without Court approval, hours that cannot be identified as being of any benefit to this estate. I find the hourly rate grossly inflated, the hours charged to be – the Court [is] incapable of calculating what would truly be involved with the . . . true representation of the estate.

He, in essence, became a creditor of the estate, asserting a claim against the estate, which put him in a position where he had a conflict of interest to defend this claim. He was removed because the Court gave him specific time to complete the probate of the estate and he failed to do so.

I consider that he has mishandled the estate by creating various accounts, moving money at different times, commingling estate assets with personal assets, and that his efforts have essentially been responsible for this nearly ten-year fiasco.

For these reasons, the Court finds that he's not entitled to any compensation as personal representative. Likewise, Mr. Vowell, the Court finds that your services have been to no avail to the estate. That – and for that reason, all portion of your fee that you seek will come from and be the responsibility of John Schorn.

I had . . . contemplated having him be responsible for Mr. Van Hook's fees, but I believe the Court's actions in denying him any compensation is appropriate.

I will approve the fee of $12,200 for Mr. Van Hook, which will be paid from the estate. Ms. Mostoller, you have previously been awarded compensation from the estate. I believe under the circumstances that is adequate.

The monies previously awarded to Mr. Schorn by the Court are likewise approved. He's not entitled to any additional compensation is what the Court's ruling is here today.

I was – part of what we have witnessed in this case is a battle of wills between Mr. John Schorn and your client, Ms. Mostoller. I can understand why she was suspicious, but the Court notes that suffering through all of the financial testimony and watching the movement of monies throughout the years that Mr. John Schorn did, I was unable to find that any dollar was missing.

I can't – honestly don't know how . . . if this family lived like this while you were young, how in the world your parents survived to the age they did, because this . . . is probably the most egregious case that I had the misfortune of presiding over during my 24 years on the bench. And if someone is going to reward someone for this type of behavior, it's going to have to be an appellate court because the Court finds that this – this was a simple estate. It is – I have more complicated estates handled by individual families without attorneys even being involved in these cases. There was nothing complicated about this.

I recognize that part of this started off with bad advice and bad real estate advice and how this house got involved at the beginning of this case, but the law is the law and the parties all benefitted when the house was sold through the investment, I'm convinced, of estate monies in repairs of this house and it's increased value at the time of sale and that you've already been compensated for whatever – whatever happened.

* * *

THE COURT: Court costs will be assessed against the estate. . . . I have already addressed that in a prior hearing, that all the court costs associated with the dismissed appeal will be paid from Mr. Schorn's – Mr. John Schorn's side.

-9-

. . . The $5,000 to Mr. Varcelona will likewise be charged to Mr. John Schorn's side of the equation.

The trial court noted by order that the judgment in this matter is final. This timely appeal followed.

## II. ISSUES

We restate the issues raised by the PR in this appeal as follows:

1.      Whether we have jurisdiction over this appeal.

2.      Whether the trial court failed to follow the statutory procedure for settling estates (Tennessee Code Annotated section 30-2-601).

3.      Whether the procedure that the trial court followed to determine the PR's claims for compensation is recognized in Tennessee law and whether it violated the PR's right to due process.

4.      Whether the trial court was in error in disallowing the majority of the PR's claims for compensation for work done on Decedent's residence and other claims and fees.

5.      Whether the $15,000 that the trial court ordered the PR to "return to the estate" was ever a probate asset to begin with, whether the trial court was in error in requiring the PR to "return it to the estate," and whether the trial court was in error in finding fault with the PR in regard to these funds.

6.      Whether the trial court was in error in removing the PR.

7.      Whether the trial court was in error in not charging Mary $1,342 as the

value of seven boxes of personal property that were awarded to her.

8. Whether the trial court was in error in not charging Charles with contractual interest on his obligation to the estate.

9. Whether the trial court was in error in not awarding the PR attorney fees for his attorney's work in the trial court, and specifically, where the PR prevailed on numerous issues, or should have prevailed, had the trial court ruled correctly.

10. Whether the PR should be awarded his attorney fees for work on appeal.

## III.  STANDARD OF REVIEW

We review a non-jury case de novo upon the record with a presumption they are correct unless the evidence preponderates against the court's findings.  Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  The court's legal conclusions are reviewed de novo without a presumption of correctness.  *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

The extent to which a personal representative should be compensated "rests in the sound discretion of the court and is to be determined in view of all of the circumstances of the case."  *Wood v. Lowery*, 238 S.W.3d 747, 760 (Tenn. Ct. App. 2007) (citing *Estate of Griffith v. Griffith*, 452 S.W.2d 895, 902 (Tenn. Ct. App. 1969)).  "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining."  *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).  If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative.  *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

We review credibility determinations made by the trier of fact with great deference.  *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).  The rationale for this

deference is that trial courts observe witnesses as they testify and can draw inferences from their demeanor, thus placing those courts in the better position to assess witness credibility. *Id.*

## IV. DISCUSSION

### A.

The PR asserts that the ultimate cash distribution to each beneficiary has not been approved and that this is not a final judgment. It is the position of Substitute Personal Representative Van Hook that the order was a final order in both fact and law.

Under Rule 3 of the Tennessee Rules of Appellate Procedure,[2] only a final judgment in a civil action is appealable as of right. *In re Estate of Ridley*, 270 S.W.3d 37, 40 (Tenn. 2011). Tennessee courts have generally defined a final judgment as "one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). Conversely, an order that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all of the parties is generally not final or appealable as a matter of right. *State ex rel. Garrison v. Scobey*, No. W2007–02367–COA–R3–JV, 2008 WL 4648359, at *5 (Tenn. Ct. App. Oct. 22, 2008).

In *In re Estate of Goza*, No. W2013–00678–COA–R3–CV, 2014 WL 7235166 (Tenn. Ct. App., Dec. 19, 2014), we recognized the difficulty of applying the final judgment rule of Rule 3 to probate proceedings, which often contain multiple intermediate orders that are final with regard to certain discrete issues. *Id.* at *4. As observed in *In re Estate of Goza*, Rule 2 of the Tennessee Rules of Appellate Procedure permits us to suspend the final judgment

---

[2]In pertinent part, Rule 3 of the Tennessee Rules of Appellate Procedure provides that, except in limited circumstances,

> [I]f multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

requirement in our discretion if we find "good cause" to do so and judicial economy would best be served "by addressing the issues on their merits in this appeal." *Parker v. Lambert*, 206 S.W.3d 1, 4 (Tenn. Ct. App. 2006). Considering the immense amount of time and expense already expended in this litigation, it is in the best interest of judicial economy to expedite a decision on the merits. *See In re Estate of James*, No. E2012-01021-COA-R3-CV, 2013 WL 593802 (Feb. 14, 2013).

**B.**

The PR complains that the trial court did not award him the requested fee of $19,958.48 calculated at the rate of $41.58 per hour.

As noted in Tennessee Code Annotated section 31-2-103, "[t]he real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative." Tenn. Code Ann. § 31-2-103; *In re Estate of Vincent*, 98 S.W.3d 146, 149 (Tenn. 2003).

Decedent's Will did not give the PR any special or other power over the real estate. Court approval of expenditures on Decedent's house was not sought prior to making them. Thus, when the PR made the decision to perform all of the repairs, without the expressed written approval of the other beneficiaries and the trial court, he proceeded at his own risk. Further, Substitute Personal Representative Van Hook contends that the benefit to the Estate was not worth the expense. As the PR had no authority at law over the real estate, we find the trial court did not abuse its discretion in equitably allowing the PR $6,500 for his work on the house.

**C.**

The PR complains that the trial court did not award him any additional fees.

Tennessee courts have addressed the obligations of a personal representative in handling estates. The estate is owed a duty of good faith and diligence in amassing and preserving assets of the estate, and the personal representative must refrain from fraudulent or abusive use of discretion. *Coffee v. Ruffin*, 44 Tenn. 487, 517 (Tenn.1867). The obligations in handling an estate are as follows:

-13-

In the custody, management, and disposition of the estate committed to the charge of a personal representative, that person is bound to demonstrate good faith and to exercise that degree of diligence, prudence, and caution which a reasonably prudent, diligent, and conscientious business person would employ in the management of their own affairs of a similar nature.

*In re Estate of Inman*, 588 S.W.2d 763, 767 (Tenn. Ct. App.1979) (quoting Pritchard on Wills and Administration of Estates, § 695 (3d ed. 1955)); *McFarlin v. McFarlin*, 785 S.W.2d 367, 369-70 (Tenn. Ct. App.1989).

A personal representative has an affirmative fiduciary duty to marshal and collect the assets of an estate and to distribute the estate to the beneficiaries in a timely manner. *Estate of Doyle v. Hunt*, 60 S.W.3d 838, 844 (Tenn. Ct. App. 2001). Generally, personal representatives are entitled to reasonable compensation for their services and to payment for reasonable expenses incurred in good faith for the necessary benefit of the estate. *In re Estate of Wallace*, 829 S.W.2d 696, 700-01 (Tenn. Ct. App. 1992); *see* Tenn. Code Ann. § 30-2-606. The determination of reasonableness is left, in the first instance, to the discretion of the trial court, which is to make that determination in light of all the relevant circumstances. *Id.* at 701. Reasonable compensation should be fixed with reference to the entire estate and services. *Loftis v. Loftis*, 28 S.W. 1091, 1093 (Tenn. 1895). Among the circumstances relevant to the reasonableness of fees and expenses to be charged against an estate are the extent of the personal responsibilities rendered, the promptness and adequacy of the services, and the value of the benefits conferred. *In re Estate of Wallace*, 829 S.W.2d at 701.

The work of the PR was inadequate and did not add much value to the estate. His actions in remodeling and repairing Decedent's house were outside the scope of his authority. Although it appears the PR did not intend to be dishonest, his handling of the Estate's money in the manner he did was questionable. As noted by the trial court, the PR encouraged suspicion by his movement of monies, failure to establish an Estate account, and commingling of monies and accounts with his wife. His actions as the agent of his mother in removing money from her account immediately prior to her death and later not divulging where it was placed gave the appearance of having appropriated money to his own use that should have been in the Estate.[3] We find that the evidence does not preponderate against the

_____

[3]As argued by Substitute Personal Representative Van Hook, given the reason it was removed from the mother's account prior to her death, this money should have been shown in some form on an accounting

(continued...)

trial court's finding that the PR did not administer the Estate in a competent manner. Therefore, he is not entitled to any further fees.

**D.**

It is well settled that courts exercising probate jurisdiction may remove an executor. *See* Tenn. Code Ann. § 30-1-151 ("An executor or administrator may be removed in accordance with the procedure in [Tennessee Code Annotated] § 35-15-706."); *In re Estate of Thompson*, 952 S.W.2d 429, 432 n.1 (Tenn. Ct. App.1997). A court may remove a personal representative if, "[b]ecause of unfitness, unwillingness, or persistent failure of the [personal representative] to administer the [estate] effectively, the court determines that removal of the [personal representative] best serves the interest of the beneficiaries." Tenn. Code Ann. § 35-15-706(b)(3). In removing the PR, the trial court was exercising its probate jurisdiction in this case, which includes the power to remove executors. This jurisdiction has been conferred by statute, and, thus, we hold that the trial court had subject matter jurisdiction to remove John as the personal representative of the Estate.

The court found that the PR had become a creditor of the Estate with all his claims for fees and reimbursement. Additionally, the trial court removed the PR because he failed to complete the probate of the Estate within the specific time provided by the court. The court further noted that the PR had mishandled the Estate by creating various accounts, moving money, and commingling Estate assets with personal assets.

The trial court was well within its rights to remove the PR as personal representative. The PR met the standard for removal pursuant to Tennessee Code Annotated section 35-15-706(b)(3), involving the unfitness, unwillingness, or persistent failure to administer the estate effectively. Accordingly, the trial court properly determined that the removal of the PR best served the interest of the Estate and the beneficiaries.

**E.**

The PR requests that we direct the trial court to determine and award to him, on

---

[3](...continued)
as assets held for the use and benefit of the Estate. Procedures for payment of estate debts are addressed in the Inventory and Management section of the Tennessee Code Annotated, title 30, chapter 2, part 3.

remand, his reasonable attorney fees for convincing the court to "un-reverse" itself.

Initially, the trial court allowed the PR $6,500 for the repairs to Decedent's house. The court then reconsidered the issue upon concluding that the real estate passed outside the Estate. Eventually, however, the court reinstated the award of $6,500.

Regarding attorney fees, these are normally allowed as administrative expenses to be paid by the estate, if the personal representative incurs these in good faith for the exclusive and necessary benefit of the estate. *McFarlin*, 785 S.W.2d at 372-73. Thus, the primary question to be determined is whether the services directly benefitted the Estate. Those fees not inuring to the Estate's benefit will not be allowed.

A substantial amount of the time and expense for the PR and his attorneys involved issues and litigation arising out of his removal; the reimbursement of the expenses and time spent repairing Decedent's residence; the issues surrounding the $15,000 eventually found in a safe deposit box; the objections to his accounting; the attorney's fees and personal representative fees issue; the procedural issues regarding whether the Clerk and Master or trial court should conduct certain proceedings; the issue involving the boxes of personal property; the premature appeal; and the numerous motions and hearings. We find that the evidence does not preponderate against the trial court's finding that most if not all of the services and work of PR and his several attorneys did not benefit the Estate. The court did not abuse its discretion in refusing to award certain attorney fees.

**F.**

The trial court made a specific finding as follows:

> The Court finds that the periodic accountings have shown that the loan
> to the brother, Charles, has been satisfied and the Court finds that no
> interest should be charged to Charles.

Only the PR has insisted that the loan plus interest be repaid. However, the PR's own periodic accountings revealed that the loan to Charles has been satisfied. Accordingly, no interest should be charged to Charles. The evidence before us does not preponderate against the decision of the trial court.

-16-

**G.**

The Clerk and Master recommended that Mary "repay the estate a certain sum of money" for the seven boxes of personal property. However, the Clerk and Master did not set an amount, leaving that to be set by the trial court. At the April trial, the court affirmed the findings of the Clerk and Master on this issue and specifically noted, "If she's going to be charged with it, she needs to get whatever's there." Thereafter, it appears the court ultimately ruled the personal property had no real value and that Mary did not have to pay any money to the Estate. In light of the fact that the trial court reviewed the issues in this case countless times and the matter at hand concerns items of little, if any, value, we find no reason in the record to question the decision of the trial court on this issue.

**H.**

The PR argues that the trial court did not follow the proper procedure to close an estate as set out in Tennessee Code Annotated section 30-2-601 et seq. At the hearing in May 2012, Substitute Personal Representative Van Hook stated as follows:

> A hearing was held before the Clerk and Master pursuant to Court Order on December 13, 2012. This hearing is exactly what type of hearing that John requested.

At the proceeding before the Clerk and Master, numerous issues were discussed; findings and recommendations on about eighteen issues were reduced to writing and filed with the trial court. Each of the issues about which the PR complains has been addressed in previous court hearings. The trial court also has heard proof on these issues over the decade this case has been litigated. More proof simply would be cumulative to what already exists in this voluminous record. In view of the previous rulings by the court and the objections of Mary and Charles, the PR clearly had notice what objections would be raised. We find the trial court properly followed the necessary statutory process for settling probate cases and provided sufficient due process to the PR.

**I.**

Substitute Personal Representative Van Hook requests an award of attorney's fees and costs incurred on appeal. Tennessee Code Annotated section 35-15-1004(a) provides:

In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

The determination of whether such an award is warranted on appeal is within the sound discretion of this court. *Fickle v. Fickle*, 287 S.W.3d 723, 738 (Tenn. Ct. App. 2008).

We find that good cause exists to award attorney's fees on appeal only to Substitute Personal Representative Van Hook. Therefore, the case is remanded to the trial court for a determination of the appropriate amount of fees and expenses that should be awarded to him. We urge the trial court to put an end to this prolonged litigation by taking all necessary steps to close this Estate as soon as possible.

## V.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded to the trial court for further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are taxed to the appellant, John H. Schorn.

_____
JOHN W. McCLARTY, JUDGE