FIDELITY TRUST COMPANY AND JOHN W. GREEN *v.* SERVICE
LAUNDRY COMPANY AND L. E. WILLIAMS.*

(*Knoxville.* September Term, 1929.)

Opinion filed December 9, 1929.

58

*Determination of intention of testator as cardinal rule of testamentary construction, see 28 R. C. L., 211; 3 R. C. L. Supp., 1563; 4 R. C. L. Supp., 1805; 5 R. C. L. Supp., 1521; 6 R. C. L. Supp., 1711; 7 R. C. L. Supp., 980.

GREEN, WEBB & BASS, for complainant, appellants.

KELLY & KELLY, for defendant, appellees.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The original bill was filed by the executors and the testamentary trustees of the will of Mrs. Martha C. Henson, deceased, for a construction of certain provisions of the will; and for a decree against the Service Laundry Company, incorporated, on a note for $10,500, executed by that corporation to Mrs. Henson, in the event the court should hold, upon a proper construction of the will, that the note was not relinquished by the will as an asset of the estate of the testatrix.

The cause was heard by the chancellor upon the original bill, the answer of the defendants, Service Laundry Company, L. E. Williams and L. A. Williams, and an agreed stipulation of facts.

Item nineteen of the will of Mrs. Henson contains the following:

"If either of my said nephews should be indebted to me at the time of my decease, I forgive the said debt or debts, and direct my Executors not to collect the same, but to cancel and destroy the evidences of such indebtedness. If, however, either nephew is indebted to me at the time of my decease, and the other nephew is not, or is indebted to a less extent, I direct my Executors to pay to the nephew who is not indebted to me, or who is indebted to a less extent, a sufficient sum in money to equal-

ize him with the other nephew, it being my intention to treat them both exactly alike."

Preceding paragraphs of the same item of the will designate L. E. Williams and L. A. Williams as the nephews referred to in the paragraph quoted.

The question is made by the pleadings, whether the note of a private business corporation, of the capital stock of which the nephew of Mrs. Henson, L. E. Williams, is the sole owner, is an indebtedness of the said L. E. Williams which the testatrix intended to cancel and release by the direction above quoted.

The facts stipulated with regard to the note of $10,500 are these: that the testatrix died seized and possessed "of a large estate;" that neither of her nephews, L. E. Williams and L. A. Williams, was otherwise indebted to her at the date of her death, and that the note described in the original bill was executed September 22, 1927, three days before the death of the testatrix, and was signed "Service Laundry Co. by L. E. Williams, Pres.;" that this note was one of a series of renewals of an original note for a like amount which was held by Mrs. Henson at the date of the execution of her will, in May, 1927, the original note having been executed for borrowed money; that at the date of the death of Mrs. Henson, and for some years prior thereto, her nephew, L. E. Williams, was the sole owner of all the capital stock of the Service Laundry Company. The answer of the three defendants states that three "qualifying shares" of stock in the corporation were held by directors, but the stipulation of facts recites that L. E. Williams "owned all of the stock of the Service Laundry Company."

██ It is recognized that a business corporation, chartered under the laws of the State, has an existence separate and distinct from that of the owners of its capital stock; and that assets and indebtedness of the corporation are not ordinarily the assets and liabilities of the stockholders in their private and personal right. But it is also recognized by the courts that this separate and distinct existence of a corporation is fictitious in its nature, created and entertained for purposes incident to the conduct of the business of the corporation and the management and control of its property, and that many special circumstances may arise in which such separate and distinct existence will be disregarded.

In *Towles & Co.* v. *Miles,* 131 Tenn., 79, 85, the existence of a corporation organized and owned by a partnership was ignored, upon evidence that the corporation was a mere sham and a dummy, and the liability of the corporation was held to be a liability of the partnership. This authority was followed in *Madison Trust Co.* v. *Stahlman,* 134 Tenn., 402, 426, in which the opinion rendered in the first case was quoted, as follows:

"A corporation will be treated as a distinct legal entity, ordinarily, and until proof is adduced, to the contrary. But that notion will not prevail when the result would be to give countenance and effect to a mere sham and work injustice."

In *Nashville* v. *Ward,* 84 Tenn. (16 Lea), 27, 30-31, this court said: ". . . the existence of a corporation, independently of its shareholders, is a fiction, and that the rights and duties of an incorporated association, are in reality the rights and duties of the persons who compose it."

In 14 Corpus Juris, p. 59 (Corporations, sec. 20), the text is: ". . . and it is now well settled, as a general doctrine, that, when this doctrine is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law."

In the same work, at page 61, it is said: " 'The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth."

In 7 Ruling Case Law, p. 27, the general rule as to the legal entity of a corporation is thus qualified:

"The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical."

The language of the will clearly expresses the intention of the testatrix that neither of her nephews named in item nineteen should be required to pay to her executors any indebtedness which might be owing her at the date of her death, and that the amount of such indebtedness should be given them as an added bequest. The value of the capital stock of the Service Laundry Company, as an asset of L. E. Williams, at the date of the death of the testatrix, was directly and proportionately affected by the amount of the note held by Mrs. Henson; and if the effect of the will is to release the corporation from the obligation to pay the note, the

value of the capital stock owned by L. E. Williams will be directly and proportionately enhanced thereby. The personal wealth of L. E. Williams will be increased to the same extent by the cancellation of this note as if it had been a note executed by him individually and constituting his personal obligation. This statement is made on the assumption that the corporation is solvent and is a going concern, and since the agreed facts do not state otherwise, we think such assumption proper.

This seems to us to be a proper cause to disregard the legal entity of the corporation and to treat its assets as the assets and property of the sole owner of its stock. To interpose the legal fiction as a bar to the application of the provision of the will to the note in question would be to extend the fiction to a purpose not within its reason and purpose, and to render justice subservient to mere form, thereby defeating an obvious intention of the testatrix.

Under the facts stipulated, we therefore conclude that the direction of item nineteen of the will that the executors should not collect the indebtedness of L. E. Williams to the testatrix, applies to and operates as a cancellation of the indebtedness of the Service Laundry Company, incorporated, of the capital stock of which the said L. E. Williams was and is the sole owner.

The pleadings further present for decree, with regard to a bequest made by the will to a trustee for the benefit of L. E. Williams and L. A. Williams, (1) whether the beneficiaries are entitled to interest on the principal of the trust from the date of the death of the testatrix, or from a subsequent date; (2) whether the trustee is entitled to add to the principal from the residuary estate a sum which would yield an annual income suf-

ficient to pay the compensation of the trustee during the life of the trust; and (3) whether the two beneficiaries are entitled to receive from the trustee the net sum of $3000 each, annually, or whether they are entitled to receive the income from the trust after deducting the expense of administration and any other expense and taxes.

From the stipulation of facts on which the cause was heard by the chancellor, that the testatrix died seized and possessed "of a large estate" it may be assumed that the estate is sufficient to satisfy each of the several bequests made, but there is no stipulation as to the amount of the residuary estate. The will makes specific bequests to various kin and to educational institutions, amounting in the aggregate to more than $100,000. The residuary estate is devised to the University of Tennessee, for the purpose of erecting a dormitory. The trust in question is created and described in item nineteen of the will, which item, in full, is as follows:

"I hereby give, devise and bequeath to each of my two nephews, L. A. Williams and L. E. Williams, the sum of ten thousand dollars ($10,000) in money, and in addition thereto, I direct the Fidelity Trust Company, Trustee, to pay to my said two nephews for and during the period of their natural lives, equally, share and share alike, six per cent (6%) on a sum equivalent to one hundred thousand dollars ($100,000), that is to say each nephew shall receive three thousand dollars ($3000) per annum, the said payments to be made in quarterly, semi-annual or in annual installments as may be deemed best.

"Should either of my said nephews die without lawful issue, then all of the income arising from said $100,000 shall be paid to the surviving nephew as long as

he lives; and if both of my said nephews die leaving lawful issue, I then direct that the *corpus* of said $100,000 be divided equally between the issue of the two nephews respectively, that is to say, the lawful issue of each nephew shall receive the sum of fifty thousand dollars ($50,000). If one of my said two nephews should die, without leaving lawful issue, and the other should die leaving lawful issue, such surviving lawful issue shall take the entire fund of one hundred thousand dollars ($100,000). In case both of my said nephews should die without lawful issue, the *corpus* of the said fund shall go to the University of Tennessee and the Trustees thereof, and their successors forever, for the purposes hereinafter set out.

"If either of my said nephews should be indebted to me at the time of my decease, I forgive the said debt or debts, and direct my Executors not to collect the same, but to cancel and destroy the evidences of such indebtedness. If, however, either nephew is indebted to me at the time of my decease, and the other nephew is not, or is indebted to a less extent, I direct my Executors to pay to the nephew who is not indebted to me, or who is indebted to a less extent, a sufficient sum in money to equalize him with the other nephew, it being my intention to treat them both exactly alike.

"The provision and bequests herein made in favor of my nephews shall not be subject to their debts, or to the debts of either of them, or to the claims of any creditors they may now or may hereafter have, but the same shall at all times be exempt from execution, attachment or other legal process against my said two nephews. The title to the $100,000 trust estate is vested in the Fidelity Trust Company, of Knoxville."

█ The problem with which the court is presented is to discover and give effect to the intention of the testatrix. The course of the inquiry is thus stated in *Hoggatt* v. *Clopton*, 142 Tenn., 184, 192:

"The cardinal rule in the construction of all wills is that the court should seek to discover the intention of the testator. To this rule all other rules of construction must necessarily yield. This intention is not to be ascertained from any separate portion or expression in the will, considered apart from the rest of the instrument, but is to be arrived at from a consideration of the will as a whole."

█ It seems manifest from the second paragraph of item nineteen that the testatrix was not concerned merely with providing an annuity of $3000 per annum for each of her two nephews, for in the second paragraph of the item the direction is made that in the event of the death of one of the nephews, without leaving lawful issue, the survivor is to be paid "all of the income arising from said $100,000" so long as he lives. The language of this paragraph of item nineteen further manifests clearly, as we think, the conception of the testatrix that the trust fund will amount to a *corpus* of $100,000. This idea is so definitely expressed that it seems sufficient here simply to direct attention to the fact.

Again, the concluding sentence of item nineteen is:

"The title to the $100,000 trust estate is vested in the Fidelity Trust Company, of Knoxville." In this language the testatrix expresses her conception that the trust estate is to consist of the *corpus* of only $100,000.

The intention thus clearly expressed is to withdraw from the residuary estate a fund of $100,000, to be held in trust for the use of her two nephews, for life, with

remainder to their surviving lawful issue, with provisions for contingent remainders over in the event either or both of the nephews should not be survived by lawful issue.

The direction of the first paragraph of item nineteen is that the trustee should annually pay to the two nephews, share and share alike, "six per cent (6%) on a sum equivalent to one hundred thousand dollars ($100,000), that is to say, each nephew shall receive three thousand dollars ($3000) per annum."

When this language is read in connection with the language of paragraph two, wherein the testatrix manifested her intention to set apart a *corpus* of $100,000 for the purposes of the trust, we think the meaning is that the two nephews, during the period of their natural lives, are to be paid, share and share alike, the income on the trust fund of $100,000. The testatrix obviously expected that this income would be sufficient to enable each nephew to receive $3000 annually; but if it develops that the income is not so large, the language of the will is not sufficient, in our opinion, to augment the trust fund beyond the *corpus* of $100,000 expressly bequeathed in trust to the testamentary trustee.

The language of the item as a whole expresses the intention of the testatrix to dispose of only the income during the lives of her two nephews, and during the life of the survivor, if one die without lawful issue, with the *corpus* remaining intact in the hands of the trustee during the life of the trust.

Item twenty-two of the will is:

"It is my wish and I hereby direct that all the bequests and legacies made in this will shall be net to the beneficiaries, it being my intention that the same shall not

be subject to deduction on account of income, inheritance or other taxes.''

This direction is made with regard to all of the many bequests and legacies of the will, some sixteen in number, and contains no specific reference to the trust estate created by item nineteen.

As applied to the trust estate, we think this item can be given no effect than to express the intention of the testatrix that the *corpus* of $100,000 shall be turned over to the trustee, without diminution on account of income, inheritance or other taxes.

The Federal Income Tax on the annual income from the trust fund is a personal obligation of each of the beneficiaries, respectively, the amount of the tax dependent upon the other income of each beneficiary, determining whether the tax is the normal tax or an added surtax. If the income tax on the income derived from the trust fund is to be paid by the estate, as a charge on the residuary estate, then the annual State, county, and municipal *ad valorem* taxes would be a like charge on the residuary estate. This would effect a very substantial increase of the *corpus* of the trust estate, over and above the amount specified by the testatrix in item nineteen. We see no justification for giving to the general language of item twenty-two such an effect. The specific language of item nineteen should not be so greatly extended by implication.

The conclusions hereinabove expressed apply to the compensation of the trustee named in item nineteen of the will. The bequest is of the income, which is the net income, after satisfying taxes on the *corpus* and expenses incurred in its preservation and management.

The remaining question to be determined is the date from which the beneficiaries of the trust are entitled to receive the income accruing to the trust fund.

The trustee, to whom title to the fund was bequeathed in trust by the last sentence of item nineteen of the will, is also one of the two executors named in the will, and with the acquiescence of the coexecutor, would have been authorized to set apart the trust funds from the estate at any time after the death of the testator and the probate of the will. The general rule for the time when legacies may be paid is accurately stated in Sizer's Pritchard on Wills, section 747, page 848:

"Taking the statutory provisions and the decisions thereon together, however, the result seems to be that the failure of the personal representative, out of court, to pay over a legacy or distributive share within two years and six months from the grant of administration, does not put him in default. He is not bound to wait so long; he may pay before, if justified by the condition of the estate; and if the assets of the estate are in money, or effects readily convertible into money, and there are no debts, he should pay over the legacies or shares without delay."

The stipulation of facts does not show what, if any, action has been taken by the executors and testamentary trustee toward setting apart $100,000 of the assets of the estate as the trust fund; but it is clear that the beneficiaries are entitled to the income accrued on such fund at least from the time it is so set apart for the purposes of the trust; such action being in effect a payment of the legacy to the trustee, when an executor is named in the will as trustee.

■  The will does not manifest an intention on the part of the testatrix to provide "an immediate support" for the beneficiaries of the trust, and the general rule is that in such case, the trustee, for the beneficiaries, would be entitled to demand interest on the fund only after the lapse of one year from the death of the testatrix, if the fund was not sooner turned over to him as trustee. *Morgan* v. *Pope,* 47 Tenn. (7 Coldwell), 541, 549-550. This rule would clearly be applicable if the trustee were not one of the executors, and had no control over the distribution of the assets and the payment of legacies.

But when the testatrix names an executor as testamentary trustee, the fund bequeathed in trust may be treated as in the possession of the trustee, for the use of the beneficiary of the trust, as soon as the executors obtain possession of sufficient assets of the estate to justify the application to the trust of the sum fixed by the will. We reach this conclusion upon the authority of *Harrison* v. *Henderson,* 54 Tenn. (7 Heiskell), 315, 347-348, wherein this court said:

"The next question presented is, as to the bequest of four thousand dollars to Mary Harrison, the complainant. The language of the will, so far as is necessary to be quoted, in the ninth item, is: 'I do set apart out of my estate in the hands of my executor, the sum of four thousand dollars, to be held by my executor subject to the following trusts, to-wit: during the joint lives of my said daughter Mary M., and her husband William Harrison, to be put out at interest, and so accumulate, and at the death of said William Harrison the principal and interest to be paid over to her, first deducting compensation to the trustee.' This made Henderson testa-

mentary trustee as to this fund, as soon as it could be raised, if not on hand at the death of the old man. If it was on hand, then he would immediately become the trustee to hold the fund and its accumulation until the time when it could be paid over to the complainant, at the death of her husband.

"We think it clear that this legacy bears interest from the death of the testator, as his intention certainly was that it should accumulate. The setting apart by his will shows the intention to be, that it should take this direction from that date, when the will took effect, and not be payable at the end of a year, as is the general rule in cases of pecuniary legacies."

The stipulation of facts upon which the cause was heard by the chancellor is not definite as to the nature of the estate, or the amount coming into the hands of the executors immediately after the probate of the will. The decree of this court will provide that the beneficiaries of the trust are entitled to the income from the trust fund from the date the executors came into possession of sufficient assets of the estate to justify them in setting apart the trust fund from the remainder of the estate, but in no event more than one year after the death of the testatrix, to ascertain which date the cause will be remanded to the Chancery Court of Knox County; unless the parties can agree on the proper date, in which event decree may be entered here fixing the date agreed upon. The decree of the chancellor will be otherwise reversed as hereinabove indicated. All costs are adjudged against complainants, as executors, to be paid out of the general estate of the testatrix.