**Mary Grace McCONKEY and husband, Don McConkey, Plaintiffs,**

**v.**

**McGHAN MEDICAL CORPORATION, et al., Defendants.**

**No. 3:98–CV–003.**

United States District Court, E.D. Tennessee, Knoxville Division.

July 6, 2000.

Lisa June Cox, Jackson, Tenn.; Michael R. Hugo, Samuel M. Pollack, Hugo & Pollack, Boston, Mass., for Mary G. McConkey.

Lisa June Cox, Jackson, Tenn, for Don McConkey.

Randall D. Noel, Nathaniel L. Prosser, Armstrong, Allen, Prewitt, Gentry, Johnston & Holmes, Memphis, Tenn., for McGhan Medical Corp. and Minnesota Mining & Manufacturing Corporation.

William Scott, Jr., Clark & Scott, Birmingham, Ala., for defendant Nusil Technology.

## *MEMORANDUM OPINION*

JARVIS, District Judge.

This is a products liability action brought by plaintiffs Don and Mary Grace McConkey against McGhan Medical Corporation, Nusil Technology, and Minnesota Mining and Manufacturing Company (hereinafter "3M") for damages sustained by their alleged part in the production and supply of silicone breast implants. Currently pending is 3M's motion for summary judgment [Court File # 15]. For the reasons below, 3M's motion regarding all claims will be granted.

### I.

#### *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

McGhan Medical Corporation (McGhan I) was incorporated on November 20, 1974 and began marketing a line of silicone breast implants in early 1975. In June of 1977, 3M acquired all assets of McGhan I and transferred them to a newly created subsidiary of 3M which was also named McGhan Medical Corporation (McGhan II). In 1980, McGhan II was merged into 3M and became a department in 3M's Surgical Products Division.

In 1984, with concerns mounting over future tort liability relating to breast implant production, 3M sold its breast implant business to a newly created McGhan Medical Corporation (McGhan III). The founder of McGhan I and other investors had formed McGhan III. 3M provided McGhan III with a substantial portion of the $5.5 million dollar purchase price via a loan to the new company. 3M then stopped making breast implants.

In 1985, McGhan III became a wholly owned subsidiary of First American Corporation (later renamed "INAMED").

INAMED then defaulted on the loan it had acquired through its purchase of McGhan III. 3M agreed to restructure the loan and then threatened INAMED with litigation when they again defaulted on the loan.

Mary McConkey was implanted with a McGhan silicone breast implant on August 12, 1988. On November 22, 1988, her implant was replaced with another McGhan implant. Finally, on September 9, 1991, her implant was again replaced by another McGhan implant. Mary McConkey then brought suit alleging that the implants caused her physical and emotional damages. Her husband, Don McConkey, also sued claiming loss of consortium and damages relating to medical expenses incurred due to his wife's injuries.

### II.

#### *Summary Judgment Standards*

A party is entitled to have a judgment in its favor "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 mandates entry of a summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322, 106 S.Ct. 2548. One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Id.* at 323–24, 106 S.Ct. 2548.

## III.

### *Parent/Subsidiary Liability*

■ Plaintiffs claim that, because McGhan III acted under the power of 3M, the liability for production of breast implants by McGhan III may be attributed to 3M. However, Plaintiffs have failed to prove what strings ran from the hand of 3M to the "puppet" McGhan III that would justify piercing the corporate veil.

■ A corporation is usually treated as a separate entity. *Post Sign Co. v. Jemc's, Inc.*, 48 Tenn.App. 13, 342 S.W.2d 385, 390 (1960); *see* 18 Am.Jur.2d, *Corporations* § 42 at 840 (1985). This presumption, however, will be quickly disregarded upon a showing that the corporation is a mere sham or dummy. *Post Sign* at 390 (*citing Fidelity Trust Co. v. Service Laundry Co.*, 160 Tenn. 57, 22 S.W.2d 6 (1929)); *see Dillard & Coffin Co. v. Richmond Cotton Oil Co.*, 140 Tenn. 290, 204 S.W. 758 (1918); *Tennessee Consol. Coal Co. v. Home Ice & Coal Co.*, 25 Tenn.App. 316, 156 S.W.2d 454 (1941).

In *Continental Bankers Life Ins. Co. of the South v. Bank of Alamo*, the Tennessee Supreme Court established a three-part test to establish whether a corporation was a mere instrumentality of another corporation and therefore warranted piercing the corporate veil:

(1) The parent corporation, *at the time of the transaction complained of,* exer-
cises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.

(2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

578 S.W.2d 625, 632 (Tenn.1979) (emphasis added) (paraphrasing *Lowendahl v. Baltimore & O.R. Co.*, 247 A.D. 144, 287 N.Y.S. 62 (1936)).

In *Federal Deposit Ins. Corp. v. Allen*, the United States District Court for the Eastern District of Tennessee provided an extensive list of additional factors that may be considered when deciding whether to pierce the corporate veil:

(1) Whether there was a failure to collect paid capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to main-

tain arms length relationships among related entities.

584 F.Supp. 386, 397 (1984) (citing, *inter alia, Neese v. Fireman's Fund Ins. Co.*, 53 Tenn.App. 710, 386 S.W.2d 918 (1964)).

■ The party wishing to negate the existence of separate legal entities has the burden of proving facts sufficient to justify piercing the corporate veil. 18 C.J.S., *Corporations* § 18 at 290 (1990). Plaintiffs point to the substantial loan made to McGhan III and the subsequent default and later debt restructuring by 3M as proof that McGhan III was a mere instrumentality of 3M. However, no other evidence is provided by Plaintiffs to upset the presumption that 3M and McGhan acted as separate legal entities. If anything, the possible specter of domination or control of McGhan III by 3M was destroyed by the purchase of McGhan III by the publicly owned INAMED in 1985. Whatever power 3M may have exercised over McGhan III from the time of its creation in 1984, that control was most certainly severed when McGhan III was purchased by INAMED one year later. If it was not, Plaintiffs have failed to provide the necessary evidence to begin proving the contrary. Therefore, Plaintiffs have failed to make a showing that 3M controlled McGhan III "at the time of the transaction complained of" which *Bank of Alamo* requires.

Furthermore, Plaintiffs have also failed to provide the court with proof of any other factors designated in *Federal Deposit* that might justify piercing the corporate veil. For example, Plaintiffs cannot establish that the activities between 3M and McGhan III were not of an arm's-length nature. In fact, the correspondence and threat of litigation made by 3M against McGhan III and INAMED reflects that the business entities were not intertwined in familiarity. Also, Plaintiffs have failed

to provide evidence showing that 3M wished to transfer any of its existing liability regarding the production of breast implants. Plaintiffs have proved that 3M wished to transfer liability regarding the production of breast implants in the future. However, Plaintiffs have not produced any case law that holds a company liable simply because it chose to sever *future liability* by selling a liability-creating department to another business. 3M has not contended that the transfer of its breast implant division in 1984 indemnified it from any past liability for breast implants it manufactured before the divestiture to McGhan III. Finally, Plaintiffs have offered no proof that 3M participated in any way in the policies or business practices of McGhan III at any point in time. Standing alone, the loan by 3M to McGhan III falls short of the quantum of proof necessary to establish that McGhan III was a puppet or alter ego of 3M.

The sheer absence of any proof that the two companies acted as one provides this court with no other option but to grant 3M's motion for summary judgment regarding Plaintiffs' claim under theories of instrumentality, alter ego, or parent/subsidiary.

## IV.

### *Negligence Failure To Warn*

■ Plaintiffs next claim that 3M was negligent in allowing the production of silicone breast implants to continue after questions about the products' safety became apparent. To establish a negligence cause of action in Tennessee, one must prove that the defendant owed a duty to the plaintiff, that said duty was breached, and that the breach was the cause in fact and proximate cause of the plaintiff's injury or loss. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn. 1996). Plaintiffs argue that McGhan III's

legal duty to its customers also applied to 3M because of the close relationship between the two companies.

■ However, the separate legal identities of the two corporations fatally wounds Plaintiffs' attempt to transfer to 3M's doorstep McGhan III's duty to its customers. "As a general rule, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others." *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn.Ct.App. 1992). Because 3M had no duty to the customers of McGhan III, any claim of negligence against 3M by customers of McGhan III must fail. Accordingly, 3M's motion for summary judgment regarding the claim of negligence is granted.

■ Furthermore, Plaintiffs contend that 3M is liable for its failure to warn the customers of McGhan III about the possible dangers of breast implants. A manufacturer has a duty to warn its customers of hidden and unknown dangers in its products. *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690 (Tenn., 1984). However, Plaintiffs cannot establish that 3M owed a duty to the customers of McGhan III to warn about dangers of breast implants it did not produce. It is uncontested that 3M did not manufacture or sell the three breast implants used on Mrs. McConkey. Plaintiffs again insist that 3M, as master of the "puppet" McGhan III, possessed a duty to warn. However, because Plaintiffs have failed to establish that McGhan III was a "puppet" of 3M, McGhan III's duty to warn cannot be transferred to 3M. Accordingly, 3M's motion for summary judgment regarding failure to warn is granted.

## V.

### *Products Liability*

■ In Tennessee, a products liability action requires that the plaintiff's injuries be caused by the defendant's "...manufac-

ture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn.Code Ann. § 29–28–102(6) (1998); *see Ray v. BIC Corp.*, 925 S.W.2d 527 (Tenn.1996); *Memphis Bank & Trust Co. v. Water Serv., Inc.*, 758 S.W.2d 525 (Tenn.1988). Plaintiffs have not contested the fact that McGhan III, not 3M, manufactured and sold the breast implants in question. Plaintiffs point to the "control" 3M exercised over McGhan III to justify placing responsibility for the nature of McGhan III's product with 3M. However, Plaintiffs again have utterly failed to show what, if any, "control" 3M exercised over McGhan III. Therefore, 3M's motion for summary judgment regarding claims of products liability is granted.

## VI.

### *Misrepresentation*

■ Plaintiffs also contend that 3M is liable for making misrepresentations to Mrs. McConkey regarding the safety of breast implants. In order to establish a claim for either fraudulent or innocent misrepresentation, one must first establish that the defendant made a misrepresentation of a past or present fact on which plaintiff relied to her detriment. *See McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127 (Tenn.Ct.App.1982); *Metropolitan Gov't of Nashville v. McKinney*, 852 S.W.2d 233 (Tenn.Ct.App.1992). Unfortunately, Plaintiffs have provided no evidence to show that McConkey relied on any information provided by 3M. Therefore, 3M's motion for summary judgment regarding claims of misrepresentation is granted.

## VII.

### *Breach Of Warranty*

■ In Tennessee, a claim for breach of express or implied warranty can only be

brought against the seller of the product in question. *See* Tenn.Code Ann. §§ 47–2–313(1)(a), 47–2–314(1), and 47–2–315 (1998). Because 3M neither manufactured the products in question nor controlled the products' manufacturer, any claim of breach of warranty must fail. Therefore, 3M's motion for summary judgment is granted regarding the claim of breach of express and implied warranty.

## VIII.

### *Negligence Per Se*

Plaintiffs claim that 3M is guilty of negligence per se. To establish a claim of negligence per se, one must identify that the defendant breached a statute, regulation, or ordinance. *See Scarborough v. Brown Group, Inc.*, 935 F.Supp. 954, 965 (W.D.Tenn.1995). Plaintiffs have failed to establish what statute, regulation or ordinance 3M violated. In fact, because 3M did not manufacture or design the products in question, it is hard to see how Plaintiffs could make such a claim. Accordingly, 3M's motion for summary judgment is granted regarding Plaintiffs' claim of negligence per se.

## IX.

### *Civil Conspiracy*

In Tennessee, a civil conspiracy is defined as a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means. *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344, 347 (1948). Necessary elements for such a claim include common design, concert of action, and an overt act. *Kirksey v. Overton Pub, Inc.*, 739 S.W.2d 230, 237 (Tenn.Ct.App. 1987) (citing *Koehler v. Cummings*, 380 F.Supp. 1294 (M.D.Tenn.1971)). At no time have Plaintiffs provided this court with evidence establishing that such activity took place between 3M and McGhan III. Accordingly, 3M's motion for summary judgment regarding the claim of civil conspiracy is granted.

## X.

### *Emotional Distress*

Under a claim of either negligent or intentional infliction of emotional distress, it is essential to show that the defendant engaged in conduct that caused the plaintiff's emotional distress. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Menuskin v. Williams*, 145 F.3d 755, 769 (6th Cir.1998). Plaintiffs have failed to prove what conduct 3M engaged in that would allow this court to sustain a claim for either intentional or negligent infliction of emotional distress. Therefore, 3M's is entitled to summary judgment regarding claims of intentional and negligent infliction of emotional distress.

## XI.

### *Fraud Claims*

Plaintiffs also claim that 3M concealed material facts about the risks and defects associated with silicone breast implants. In order to establish a claim for fraud based upon silence or concealment of the truth, one must show that the defendant owed a duty to speak or disclose information. *See Justice v. Anderson County*, 955 S.W.2d 613, 616 (Tenn.Ct.App. 1997). Such a duty may be created where there is a fiduciary or contractual relationship between the parties creating a duty of trust and good faith. *See Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn.Ct. App.1986). Plaintiffs, however, have not provided evidence that such a relationship existed between 3M and McConkey. Therefore, 3M had no duty to disclose

information to the plaintiffs. Accordingly, 3M's motion for summary judgment is granted regarding the claim of fraudulent concealment.

■■■ Plaintiffs next allege that 3M divested its breast implant business to McGhan III without properly disclosing to the world the risks associated with breast implants. However, Plaintiffs do not address the fact that the medical community, the Food and Drug Administration, and much of the public already knew of the risks associated with such devices as early as the late 1970's. Numerous studies published before 1984 indicated the dangers of silicone use inside the human body. 3M therefore had no duty to reveal information already in the public domain. Additionally, papers filed with the Securities and Exchange Commission indicate that the purchase and loan structure between 3M and McGhan III was fully disclosed. Therefore, 3M's motion for summary judgment regarding fraudulent divestment is granted.

## XII.

### Conclusion

Plaintiffs' claims against 3M must be dismissed because they lack one essential element: 3M did not design, manufacture, or sell the breast implants in question. Plaintiffs' repetitious assertion that McGhan III acted as a puppet of 3M does not in itself provide the necessary evidence to make the assertion true. Finally, because all of Plaintiffs' substantive claims have been dismissed. Plaintiffs' demand for compensatory and punitive damages cannot survive summary judgment.

Order accordingly.