IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2001 Session

## VP BUILDINGS, INC. v. POLYGON GROUP, INC., ET AL.

**Appeal from the Chancery Court for Montgomery County**
**No. 99-08-0100    Carol Catalano, Chancellor**

**No. M2001-00613-COA-R3-CV - Filed January 8, 2002**

In this appeal the sole shareholder and director of Polygon appeals the trial court's decision to hold her personally liable for a debt owed by Polygon.  The corporate officer contracted to do business in Tennessee, knowing that Polygon was not qualified to do business here and knowing that Polygon had not filed an annual report in three years, which made it subject to administrative dissolution. After suit was filed against Polygon, the shareholder encumbered all of the corporation's assets. Further, after she was sued personally, she filed to have Polygon's charter retroactively reinstated. The trial court held that the shareholder abused the corporate form, that the corporate entity should be disregarded and that the sole shareholder and director should be held personally liable.  We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WALTER C. KURTZ, SP. J., joined.

Roger A. Maness, Clarksville, Tennessee, for the appellant, Dawn Schmuck.

Michael K. Williamson, Craig Hargrow, Clarksville, Tennessee, for the appellees, First Missionary Baptist Church of Clarksville, Inc., Fred Dale, Trustee.

## OPINION

We find it helpful to provide a brief history of how this case, and the remaining parties, are before us.

### I.  Case History

First Missionary Baptist Church of Clarksville, Inc. ("Church") and Broady Construction, LLC ("Broady") entered into a contract for Broady to construct a building for Church.  Broady hired Polygon Group, Inc. ("Polygon") as a subcontractor to provide a pre-engineered steel building and

canopy for $154,100.  VP Builders ("VP") sold materials to Polygon for the completion of this project.

VP filed a complaint against Polygon, Broady, Church and Fred Dale, who was the trustee for Church, in which it alleged that it had sold Polygon $95,552 worth of materials that Polygon incorporated into the building and that Polygon had not paid VP for those materials.  VP also properly perfected a materialman's lien against the property of the Church and sought to enforce the lien.

Church and Mr. Dale, represented jointly, answered VP's complaint and asserted an affirmative defense that Church had paid Polygon $154,092 and that Polygon either wilfully or negligently failed to pay VP.  Church and Mr. Dale also filed a cross-claim against Polygon, for any amount that Church owed to VP and for punitive damages, in addition to a third-party claim against Dawn W. Schmuck, who is the sole shareholder, director and officer of Polygon, seeking to pierce the corporate veil of Polygon and hold Ms. Schmuck individually liable for her misconduct and that of Polygon.  Ms. Schmuck answered the third-party complaint denying that she was individually liable to Church as a result of Polygon's non-payment for material.

Polygon answered VP's complaint and admitted that it had received the materials for the building from VP and also admitted that it had not paid VP for those materials, but disputed the amount it owed to VP.  In answer to the cross-complaint, Polygon admitted it had been paid in full by Church and Mr. Dale but failed to pay VP for a portion of the materials used.

VP voluntarily dismissed its claim against Broady.  The parties remaining, VP, Polygon, Church and Mr. Dale, stipulated that VP was entitled to a judgment for the amount of its lien against Church and Mr. Dale and that it was entitled to the lien amount plus prejudgment interest against Polygon. Church paid VP the amount in dispute and the other parties, Church and Mr. Dale against Polygon and Ms. Schmuck, went to trial.  The trial court found Polygon liable and Ms. Schmuck personally liable in the amount of $88,701 and declined to award Church and Mr. Dale punitive damages.

## II.  Findings of Fact Regarding Polygon

The trial court in this case gave the factual basis for its holding on the record, and the following factual statements are taken from the court's findings of fact.  In January of 1992 Polygon began its existence as a Kentucky corporation.  Ms. Schmuck is the sole stockholder, the only director and the president of Polygon.  At the time of its organization, the first meeting of the shareholders was conducted.  The next meeting was held in January of 1993.  All the meetings between January of 1993 through 2000 are documented by a computer-generated repetition of the minutes of the year before.  This generation of minutes cost the corporation nothing.

In March of 1996 the state of Kentucky administratively dissolved this corporation for failure of Polygon to file annual reports, which required an annual filing fee. The annual reports went unfiled for several years.

At some point, Ms. Schmuck prevailed upon her husband to leave a high paying job and to come to work for Polygon. In 1998, Polygon lost money in its business operation, a total of $146,118. In that year Ms. Schmuck paid herself and her husband a total of $106,650.

On November 20, 1998, Ms. Schmuck entered into a contract on behalf of Polygon with Broady to construct a building for Church, which was located in Tennessee. Polygon did not, and never has, qualified to do business in the state of Tennessee, which would have required it to pay a fee. At the time that Ms. Schmuck entered this contract she knew that Polygon was losing money. She also admitted that there was another lawsuit pending against Polygon at the time she entered the contract.

The income tax return for Polygon for 1999 indicated that the corporation again lost money in that year in the amount of $141,473. Ms. Schmuck, through Polygon, paid herself and her husband a total $79,708 that year.

Polygon finished erecting the steel building for Church, and Church paid Polygon in full, $154,100. Polygon did not pay VP for the steel that VP provided to Polygon for the building. VP filed a lien on Church's property, and Church is now subject to foreclosure. Of the monies that Church paid to Polygon, $50,990 was paid on February 11, 1999, and in the two (2) years prior to trial Polygon had not paid VP any amount on the contract.

After VP filed suit against Polygon, Polygon borrowed $300,000 against its only asset, a building. Ms. Schmuck testified that this represented all of the equity in the corporation's assets. She borrowed all she could. Ms. Schmuck told the court that she paid bills, other than the money that she owed to VP, with this money, but provided the court with no documentary evidence as to what she paid. Further, she also did not provide any other documentary evidence as to how the $300,000 was spent.

The trial court characterized her behavior as "I've got this corporation out there. I don't have to worry about what happens. It's been sued. But I don't have to worry about it." Church then sued Ms. Schmuck personally on the basis that Polygon had been paid all that it was owed by Church. After Ms. Schmuck was personally sued and realized that she was exposed to personal liability she got her corporate records in correct order. Ms. Schmuck then called her corporate attorney and was advised to prepare and file the annual reports. Thereafter, she filed reports for 1996 through 1999, and paid for each of them to be filed with the state of Kentucky. As a result, she received a reinstatement notice for the corporation.

Ms. Schmuck testified that she did not receive notice that Polygon was being dissolved for failure to file annual reports because the corporate address had changed several times. The court noted that Polygon had been incorporated since 1992 and that Ms. Schmuck filed annual reports in

1993 and 1994. "It's not a matter of [the state] sending notice that your corporation is administratively dissolved as much as it is knowing, like income tax, you're supposed to file annually a report with the state of Kentucky and pay a fee." Ms. Schmuck testified that she had formed other corporations and that these other corporations are subject to her management and control. Further, she testified that she was aware that at least one other of her corporations was administratively dissolved for failure to file annual reports. Therefore, the court found, she is not someone who is unaware of what is required for a corporation to do business in the practical sense. The court stated that it thought that the only reason that Ms. Schmuck did not file the report was because she didn't want to pay the fee.

As it stood at the time of trial, Polygon owed money to Church, who had paid for the steel in its building twice. The only shareholder, director, and manager of Polygon had encumbered all of its assets after suit was filed; therefore, Polygon could not pay Church. Ms. Schmuck was, at the time of trial, working for Polygon, but not being paid, and her husband no longer worked for Polygon, but for one of the other corporations she owned. The court stated that the management decisions not to pay what monies were received were made by Ms. Schmuck and were for the personal benefit of herself and her husband alone. Further, the court said that without proof and documentation it was not satisfied that Ms. Schmuck should not be personally liable. "If she in good faith made all those decisions, the evidence should be here for everyone to see."

Other relevant evidence presented at trial was that the initial capital contribution to Polygon was $500. Ms. Schmuck also testified that with the $300,000 borrowed on Polygon's building, she purchased the building on a lease/purchase arrangement, paid other creditors, including VP, thereby releasing liens on the property of other owners, paid some overdue taxes, and that some of the money went to pay Polygon's twenty to twenty-one employees. However, at trial she did not provide any documentation to support these claims. In 1998, Polygon provided Ms. Schmuck with a Land Cruiser at a cost of about $1800 per month, and in 1999 Polygon and another corporation formed by Ms. Schmuck shared payments to provide her a Lexus, which cost approximately $950 per month. Ms. Schmuck's only direct contact with the Church was a meeting with the Pastor, but no contractual matters were discussed.

The trial court held Ms. Schmuck personally liable to Church for $88,701, the amount of VP's lien on Church.

### III. Piercing the Corporate Veil

The sole issue for our review is whether the actions of the appellant, Ms. Dawn Schmuck, were sufficient to justify piercing the corporate veil of Polygon and impose personal liability on her.

Conditions under which the corporate entity will be disregarded vary according to the circumstances present in the case, and the matter is particularly within the province of the trial court. *Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) (citing *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522 (Tenn. 1985)); *Piper v. Andrews*, No. 01A01-9612-CV-00570, 1997 WL 772127, at *3 (Tenn.

-4-

Ct. App. Dec. 17, 1997) (Perm. app. denied June 8, 1998). Thus, the question of when an individual should be held liable for corporate obligations is largely a factual one. "Each case involving disregard of the corporate entity must rest upon its special facts." *Muroll Gesellschaft,* 908 S.W.2d at 213; *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991).

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the trial court's findings of fact. Tenn. R. App. P. 13(d). In the case before us, the decision of the trial court turns, in part, on the trial court's perception of the witnesses' candor and truthfulness. Therefore, this court will give great weight to the credibility accorded each witness by the trial judge. *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App. 1987). As set out above, the trial court made thorough findings of fact. Our review of the record leads us to conclude that the evidence does not preponderate against those factual findings; rather, the record supports them.

There is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliated corporations. In an appropriate case and in furtherance of the ends of justice, the separate identity of a corporation may be discarded and the individual or individuals owning all its stock and assets will be treated as identical to the corporation. *Muroll Gesellschaft*, 908 S.W.2d at 213; *Schlater*, 833 S.W.2d at 925; *see also Fidelity Trust Co. v. Service Laundry Co.,* 160 Tenn. 57, 61, 22 S.W.2d 6, 7-8 (1929); *see generally E.O Bailey & Co. v. Union Planters Title Guar. Co.*, 33 Tenn. App. 439, 232 S.W.2d 309 (1950). Discarding the fiction of the corporate entity, or piercing the corporate veil, is appropriate when the corporation is liable for a debt but is without funds to pay the debt, and the lack of funds is due to some misconduct on the part of the officers and directors. *Muroll Gesellschaft*, 908 S.W.2d at 213; *S.E.A., Inc. v. Southside Leasing Co., et al.,* No. E2000-00631-COA-R3-CV, 2000 WL 1449852, at *9 (Tenn. Ct. App. Sept. 29, 2000) (no Tenn. R. App. P. 11 filed); *Emergicare Consultants, Inc. v. Woolbright*, No. W1998-00659-COA-R3-CV, 2000 WL 1897350, at *2 (Tenn. Ct. App. Dec. 29, 2000) (Perm. app. denied. May 14, 2001).

In those circumstances, courts may pierce the corporate veil to find the "true owners of the entity" liable, *Murroll Gesellschaft*, 908 S.W.2d at 213, or "to impose liability against a controlling shareholder who has used the corporate entity to avoid his legal obligations." *Manufacturers Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866 (Tenn. Ct. App. 2000). Our courts will disregard the corporation as a separate entity upon a showing that the corporation is a sham or dummy or such action is necessary to accomplish justice.[1] *Muroll Gesellschaft*, 908 S.W.2d at 213;

---

[1]Ms. Schmuck cites *Anderson v. Durbin*, 740 S.W.2d 417 (Tenn. Ct. App. 1987) for the proposition that the standard the court must follow to pierce the corporate veil is to find that the true owners engaged in skullduggery or downright fraud. Although the court announced that standard in *Anderson,* the court did not apply it. Instead, this court affirmed the trial court's finding there was no corporate liability. Without corporate liability, the issue of disregarding the corporate entity simply does not arise. Thus, *Anderson* was not a decision on the test for piercing the corporate veil. Instead, in *Anderson*, the trial court found that the owner of the corporation had contracted with the plaintiff in his individual capacity and that the plaintiff was not aware that the owner was affiliated with a corporation. Therefore, the
(continued...)

*Tennessee Racquetball Investors, Ltd. v. Bell*, 709 S.W.2d 617, 619 (Tenn. Ct. App. 1986); *Oak Ridge Auto Repair Serv. v. City Fin. Co.*, 57 Tenn. App. 707, 711, 425 S.W.2d 620, 622 (1967); *Fidelity Trust Co.,* 160 Tenn. at 61, 22 S.W.2d at 7-8; *Emergicare Consultants, Inc.,* 2000 WL 1897350, at *2; *Piper*, 1997 WL 772127, at *3.

"The principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity." *Schlater*, 833 S.W.2d at 925; *Emergicare Consultants, Inc.*, 2000 WL 1897350, at *2; *Lindsey, Bradley & Maloy v. Media Marketing Systems, Inc.*, No E200-00678-COA-R3-CV, 2000 WL 1875882, at *4 (Tenn. Ct. App. Dec. 15, 2000) (no Tenn. R. App. P. 11 filed). The party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil. *Schlater*, 833 S.W.2d at 925. While each decision must rest on its specific facts, "[g]enerally no one factor is conclusive in determining whether or not to disregard a corporate entity; usually a combination of factors is present in a particular case and is relied upon to resolve the issue." *Schlater*, 833 S.W.2d at 925; *Emergicare Consultants, Inc.*, 2000 WL 1897350, at *2; *Lindsey, Bradley & Maloy*, 2000 WL 1875882, at *4.

Some factors the court considers in determining whether to pierce the corporate veil are whether the corporation was grossly undercapitalized, the nonissuance of stock certificates, the sole ownership of stock by one individual, the use of the corporation as an instrumentality or business conduit for an individual or another corporation, the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, the use of the corporation as a subterfuge in illegal transactions, the formation and use of the corporation to transfer to it the existing liability of another person or entity, and the failure to maintain arms length relationships among entities. *Emergicare Consultants, Inc.*, 2000 WL 1897350, at *2 (citing *Federal Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386 (E.D. Tenn. 1984)).

In her brief, Ms. Schmuck discusses separately several factors involved in this case. For example, she states that the fact that she favored one creditor over another is not enough to pierce the corporate veil and cites *Schlater* as support for this statement. She also states that just because she dominates and controls the corporation and she encumbered its only asset, that is not enough to pierce the corporate veil, citing *Tennessee Racquetball Investors*. Finally, she argues that she did not specifically violate any statute of Tennessee, and so cannot be liable.

---

[1](...continued)
suit for damages for breach of contract was against the owner in his individual capacity and not as a surrogate for a corporation. Second, *Anderson* cites *Electric Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522 (Tenn. 1985) as support for its statement fraud and skullduggery are required, and *Electric Power Board* states the standard as the corporation's "separate entity may be disregarded upon a showing of special circumstances, such as, that the corporation is a sham or dummy so that failure to disregard it would result in an injustice." *Id.* at 526. In any event, we do not consider the term "skullduggery" to be limited to fraud or other criminal actions. Finally, the weight of authority on this matter supports the rule that a corporate entity can be disregarded if it is a sham or dummy or if such disregard is necessary to accomplish justice. (see citations above). The corporate entity will be disregarded only "to prevent wrong or injustice to the 'complainant.'" *Tennessee Consolidated Coal v. Home Ice & Coal Co.*, 25 Tenn. App. 316, 156 S.W.2d 454, 460 (1941).

Whether or not Ms. Schmuck is correct in her argument that no one of these factors standing alone would justify disregarding the corporate entity, her argument fails to address the fact that the court must look to the entirety of the circumstances to determine whether to pierce the corporate veil and ignores a number of factors present in this case. Considering all of the evidence together, we are of the opinion the trial court correctly disregarded the corporate entity and imposed liability on its sole shareholder.

There is no real dispute that Ms. Schmuck exercised "complete dominion over [Polygon], not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." *Electric Power Bd. of Chattanooga*, 691 S.W. 2d 522, 526 (Tenn. 1985).

Polygon was initially capitalized with $500, a gross undercapitalization considering the nature of the business in which Polygon is engaged. Polygon issued stock to Ms. Schmuck alone, but no certificate is in the record. Ms. Schmuck made personal loans to Polygon out of her personal funds. She had complete dominion and control over all corporate decisions and actions.

Ms. Schmuck repeatedly failed to observe corporate formalities. Polygon was not qualified to do business in Tennessee, but Ms. Schmuck knowingly entered into contract here on behalf of the corporation.[1] Her failure to file required annual reports resulted in administrative dissolution of Polygon by the state of Kentucky. The contract with Broady and Church was executed on behalf of Polygon at a time when the corporation had been dissolved. Ms. Schmuck did not attempt to get Polygon's charter reinstated until after she was personally sued.

Ms. Schmuck has created many corporations in which she is the sole shareholder. She admits that she knows what must be done to keep them in good standing with the State. She actively engaged in business knowing that she had not filed annual reports and that she had not paid the filing fee. While Ms. Schumck states she never got notice of the dissolution, we agree with the trial court that such notice was not necessary for us to attribute to Ms. Schmuck a disregard of the corporate entity.[2]

We also find additional evidence in the record that supports the trial court's decision to hold Ms. Schmuck personally liable. For instance, Ms. Schmuck paid herself and her husband large sums

---

[1]Ms. Schmuck asserts that such failure to get a certificate of authority does not affect the validity of the corporate acts, citing Tenn. Code Ann. § 48-25-102(f). Regardless of the legal consequences of such failure, we are of the opinion that it is a relevant factor in examining the sole shareholder's disregard of corporate formalities.

[2]Again, Ms. Schmuck asserts that the retroactive reinstatement of the corporation removes any question as to the validity of the corporation's acts during the dissolution. We are of the opinion, however, that the sole shareholder's disregard of the requirements to maintain a corporation in good standing is relevant. *See Lindsey, Bradley & Maloy*, 2000 WL 1875882, at *4 ( reversing the trial court's decision to grant summary judgment to the sole shareholder and directing the court to consider a number of facts, including "whether the Defendant was aware of the administrative dissolution of Media Marketing by the Secretary of State, and if so, when he obtained this information and whether he notified Plaintiff." )

of money in the years that Polygon lost money. Ms. Schmuck said at trial that she was being sued by another company at the time that she entered into the contract with VP to provide steel for Church. Additionally, after Polygon was sued, Ms. Schmuck encumbered its only asset.

It is this encumbrance which, at least in part, prevented Church from collecting from Polygon. Absent valid corporate reasons for this encumbrance and use of its proceeds, it would, in our opinion, be unjust to allow Ms. Schmuck to hide behind an insolvent corporation. *Oak Ridge Auto Repair Serv.*, 57 Tenn. App. at 711, 425 S.W.2d at 621 (where the meager record indicated corporation was a mere instrumentality of shareholder and the shareholder refused to surrender property to creditor, "it would be a palpable injustice" to allow shareholder to "use the corporate entity as a shield" for thwarting foreclosure). Ms. Schmuck distributed those proceeds and failed to pay VP. Except for her testimony, the $300,000 from the equity in the building that Polygon owned is unaccounted for. Ms. Schmuck argues that the burden of proving facts sufficient "to justify piercing the corporate veil lies with the party asking the trial court to disregard the separate legal existence of the corporation" and that Church cannot prove that she did not pay off other legitimate creditors nor can it prove that her other corporations were used to divert funds. We find this argument unavailing.

The Church has proved that it paid Polygon for the building and Polygon failed to use that money to pay its obligation to VP. The Church has also proved that Ms. Schmuck encumbered Polygon's only asset, resulting in Church being unable to attach it to satisfy any judgment, and that the money received was not used to pay VP even though it was more than sufficient to do so. Church also proved Ms. Schmuck caused Polygon to pay salaries to her and her husband and provide her with expensive vehicles.

In the face of this proof, Ms. Schmuck cannot rely on the failure of documentary proof of use of the money from Church or from the loan on the corporation's asset, all evidence within her control. This court has considered the "inability to demonstrate" a lawful justification for a diversion of funds from one corporation to another as proof of corporate abuses sufficient to justify piercing the corporate veil and holding two shareholders personally liable on the debts of their corporation. *Judd's Inc. v. Muir*, No. 03A01-9801-CH-00002, 1998 WL 338212, at *4 (Tenn. Ct. App. June 26, 1998) (perm. app. denied Dec. 7, 1998). In *Muroll Gesellschaft*, when deciding to pierce the corporate veil we said, "this record is impressive – not from the facts revealed therein, but from the lack of facts revealed." There, we noted that the record contained not a single check, invoice, book entry regarding the transactions at issue, not a single operating statement, balance sheet or tax return. *Muroll Gesellschaft*, 908 S.W.2d at 214.

As in the aforementioned cases, we, like the trial court, are impressed by the lack of evidence regarding the corporation's financial activities in this case. The only evidence of Polygon's records is one tax return from 1998. There is no documentation of how the $300,000 was distributed. There was no evidence of payment of other creditors, and no check evidencing payment for "taxes" or to "employees." There is not even a list of Polygon's employees.

Church has met its burden of proof and the factors, as they exist in this case, are sufficient for the trial court to decide to pierce the corporate veil. The evidence supports the conclusion that Polygon was a mere instrumentality for Ms. Schmuck, that she abused the corporate form to the extent that the corporation was a sham, and that disregarding the corporate entity is necessary to accomplish justice. The evidence does not preponderate against the finding of the trial court, and we agree that Ms. Schmuck should be held personally liable for the money owed Church.

The judgment of the trial court is affirmed. Costs of this appeal are taxed against the Appellant, Dawn Schmuck. The cause is remanded to the trial court for any further necessary proceedings.

_____

PATRICIA J. COTTRELL, JUDGE